# Eldridge *v.* The State.

### *Indictment for Bigamy.*

1.  *Bigamy; proof of marriage by certified transcript of license and return.*—On a trial under an indictment for bigamy, a certified transcript from the office of the judge of probate of the two marriage licenses issued to the defendant, and the certificates of the officiating minister of the solemnization of the rites of marriage between the parties named in the licenses, are, under the provisions of the statute, (Code, §§ 2846, 2847), competent evidence of the fact of marriage and admissible in evidence; and the fact that the certificates which were appended to the

[Eldridge v. The State.]

licenses, referred to them for the names of the parties who were married by the officiating ministers, does not render such certified transcripts inadmissible.

2. *Evidence; admissibility of confidential communications between attorney and client.*—On the trial of a criminal case, where the defendant as a witness in his own behalf has testified to certain statements made to him by his attorney, it is competent for the attorney as a witness in rebuttal, to give testimony in reference to such statements, although his testimony would have been inadmissible as original testimony, because involving the disclosure of confidential communications between attorney and client.

3. *Same; same; bigamy.*—Where, on a trial under an indictment for bigamy, the attorney who was employed by the defendant to procure a divorce from his first wife has testified, as a witness in rebuttal, that said bill for divorce was filed by him subsequent to the time the license for the defendant's second marriage was issued, it is not competent for the defendant to introduce in evidence the endorsements upon the bill of complaint in the divorce proceedings, for the purpose of showing the date of the filing of such bill.

4. *Bigamy; general affirmative charge.*—On a trial under an indictment for bigamy, where there is no direct evidence that the first wife was living at the time of the defendant's second marriage, but there was evidence that afforded inference by the jury to that effect, the general affirmative charge requested by the defendant, on the theory that there was no evidence that the first wife was alive when the second marriage was solemnized, is properly refused.

5. *Criminal prosecution; charge as to intent to violate the law.*—In a criminal prosecution, a charge which instructs the jury that the evidence must convince each of the jurors beyond a reasonable doubt that the defendant "intended to violate the law, before he can be convicted," is erroneous and properly refused.

6. *Same; same.*—It is no defense to a criminal prosecution that the defendant committed the act pronounced by the law as criminal under a mistaken belief that it was not criminal; and, therefore, a charge is erroneous and properly refused which postulates the defendant's acquittal upon such belief on the part of the defendant.

APPEAL from the City Court of Montgomery.
Tried before the Hon. A. D. SAYRE.

The appellant Jim Eldridge was indicted, tried and convicted for bigamy, in that, having a wife living, he unlawfully married one Sylvia Williams.

On the trial of the case, the State offered to introduce in evidence a marriage license which was issued by the Judge of Probate of Montgomery county, authorizing the celebration of the rite of matrimony between Jim Eldridge, colored, and Sarah Lewis, colored. This license was dated August 23, 1893, and to it there was attached the return of the preacher who performed the rites of marriage, which return was as follows: "The above named parties were married by me at Judge Falkner's place on the 23d day of August, 1893." This marriage license and the certificate of the officiating minister was duly certified as a true and correct copy of the marriage license issued to Jim Eldridge and Sarah Lewis, and the return thereon as appeared in a certain designated book of marriages in the office of the judge of probate of Montgomery county. The defendant objected to the introduction in evidence of the certified transcript of the marriage license and the certificate of the minister upon the following grounds: 1. That it was an attempt by the State to prove the *corpus delicti* by the introduction of a mere paper. 2. By the introduction of such evidence the defendant was denied his constitutional right of being confronted by the witness against him. 3. There is no certificate of the preacher that Jim Eldridge and Sarah Lewis were married; the license and certificate of the preacher not being good evidence of the fact of a marriage in a criminal case. The court overruled this objection and the defendant duly excepted. Thereupon the State offered to introduce in evidence a certified transcript of the marriage license issued by the judge of probate on February 21, 1899, authorizing the marriage of Jim Eldridge, colored, and Sylvia Williams, colored, and also the certificate of the officiating minister. This certificate read as follows: "The above named parties were married by me at Montgomery on the 22d day of February, 1899." The transcript was certified by the judge of probate of Montgomery county as being a true and correct copy of the marriage license

issued to Jim Eldridge and Sylvia Williams, and the return thereon. The defendant objected to the introduction of this certified transcript upon the same grounds as were interposed to the introduction of the other license and its return. The court overruled this objection and the defendant duly excepted.

One John Berger as a witness for the State testified that without any inducement being offered and without any threat being made, the defendant told the witness that in the early part of the year in which the trial was had, he had employed one John Robinson, Esq., a practicing attorney in Montgomery, to secure a divorce from his wife for him and had paid him for it, and that at the time of his marriage he thought said divorce had been granted, as Mr. Robinson had told him it would be all right.

The State then proved by the minister whose name was signed to the return on the marriage license that he had, on Feb. 22, 1899, married the defendant to Sylvia Williams. The defendant as a witness in his own behalf testified that he employed Mr. Robinson to secure a divorce from his wife for him. That he paid Mr. Robinson twenty-five dollars for that purpose, and Mr. Robinson told him that he could marry again, and that he did so.

The State introduced John Robinson, Esq., as a witness in rebuttal, and asked him the following question: "Whether or not the defendant in the early part of the present year had employed him (Robinson) to secure a divorce for him from Sarah Eldridge?" The defendant objected to this question, upon the ground that it called for a confidential communication between a client and his attorney. The court overruled the objection, and the defendant duly excepted. The witness answered that he was employed by the defendant in the early part of the year and prior to Feb. 22, 1899. The solicitor then asked the witness "Whether or not the defendant told him Sarah Eldridge was his (defendant's) wife?" The defendant objected to this question upon the ground that it called for confidential communication between client and his attorney. The court

[Eldridge v. The State.]

overruled the objection and the defendant duly excepted. The witness then testified that he did not tell the defendant he could marry again prior to the time of his marriage to Sylvia Williams, nor at any other time. Upon the cross examination of this witness, he testified that the defendant had paid him $25, which he charged him to procure the divorce, but that he did not file the bill for divorce until after Feb. 21, 1899, the delay having been caused by the failure of the defendant to procure the necessary witnesses to prove a case against his wife.

The defendant offered to introduce in evidence the endorsement on the back of the bill of complaint in the divorce proceedings between the defendant and his wife, Sarah Eldridge. The solicitor objected, the court sustained the objection and refused to permit the defendant to introduce such endorsement on the back of the bill, which showed the time the bill of complaint was filed. To this ruling the defendant duly excepted.

Upon the introduction of all the evidence the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe the evidence they must acquit the defendant." (2.) "The evidence must convince each and every man of this jury beyond a reasonable doubt and to a moral certainty that Jim Eldridge intended to violate the law before he can be convicted." (3.) "If the evidence adequately convinces the jury that Jim Eldridge paid Mr. Robinson $25 and believed that said payment to said attorney entitled him to the privilege of marrying a second time he is entitled to an acquittal."

HILL & HILL, and B. F. POWELL, for appellant, cited Code, § 2847; 19 Amer. & Eng. Encyc. of Law, p. 127.

CHAS. G. BROWN, Attorney-General, for the State, cited Beggs v. State, 55 Ala. 108.

[Eldridge v. The State.]

McCLELLAN, C. J.—The certified copies of the marriage licenses issued to the defendant and the certificates of the officiating ministers of the solemnizations of the rites of matrimony between the parties named in the licenses, the certificates being appended to the licenses and referring to them for the names of the parties, were properly received in evidence under sections 2846 and 2847 of the Code.—*Beggs v. State,* 55 Ala. 108.

The testimony of the witness Robinson was in rebuttal of testimony offered by the defendant, the testimony of the defendant himself, as to communications between him and Robinson, and was therefore properly received although it would have been inadmissible, because involving the disclosure of confidential communications between attorney and client, as original testimony.

The testimony of Robinson on cross examination included some statements with reference to the filing of a bill for divorce in behalf of Eldridge against the woman to whom he was first married. This did not give defendant the right to then put in evidence the indorsements upon the bill of complaint.

It is true there was no direct evidence that the first wife was living at the time of defendant's second marriage; but there was abundant evidence to afford a basis for an inference by the jury to that effect, and the affirmative charge requested by defendant, on the theory that there was no evidence that the first wife was in life when the second marriage was solemnized, was properly refused.

The intent essential to crime is the intent to do an act which is violative of law. There need be no intent *to violate law* as is asserted in the second charge refused to defendant.

Nor can a defendant who has committed an act denounced as criminal by the law shelter himself from punishment under a mistaken belief that the act was not criminal. The third charge requested by defendant was, therefore, also properly refused.

Affirmed.