## STATE v. HENDRICKSON.

No. 4350.  Decided March 25, 1926.  (245 P. 375.)

1. STATUTES—IN CONSTRUING STATUTE, WORDS AND PHRASES ARE CONSTRUED ACCORDING TO CONTEXT AND APPROVED USAGE OF LANGUAGE. In construing statute, words and phrases are construed

---

Corpus Juris-Cyc. References:

[1, 2]  Statutes, 36 Cyc., p. 1102, n. 81; p. 1108, n. 46; p. 1114, n. 96; p. 1115, n. 98; p. 1117, n. 16; p. 1131, n. 73.

[3]  Bigamy, 7 C. J., p. 1165, n. 5, 6.

according to context and approved usage of language, and, except in case of technical words and phrases, they must be construed according to their plain and ordinary meaning.

2. STATUTES—TECHNICAL RULES OF CONSTRUCTION OF STATUTES ARE SOMETIMES DISREGARDED, ESPECIALLY WHERE IT IS MANIFEST THAT LEGISLATION COULD NOT HAVE INTENDED LITERAL INTERPRETATION. Technical rules of construction are sometimes properly disregarded, especially where it is manifest, when subject of legislation considered from all points of view is such as to convince understanding, that Legislature could not have intended a literal interpretation.[1]

3. BIGAMY—GOOD FAITH AND HONEST BELIEF OF ACCUSED, PROSECUTION FOR POLYGAMY, IN ENTERING INTO SECOND MARRIAGE, HELD INADMISSIBLE IN DEFENSE (COMP. LAWS 1917, § 8086). In Prosecution for polygamy, under Comp. Laws 1917, § 8086, good faith and honest intention of accused in entering into second marriage *held* not admissible in defense.

Appeal from District Court, First District, Box Elder County; *M. C. Harris,* Judge.

Victor N. Hendrickson was convicted of polygamy, and he appeals.

AFFIRMED.

*William J. Lowe,* of Salt Lake City, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *L. A. Miner,* Asst. Atty. Gen., for the State.

THURMAN, J.

Appellant was convicted in the district court of Box Elder county of the crime of polygamy and sentenced to an indeterminate term of imprisonment in the state prison. Both the lawful marriage and the polygamous marriage were admitted by the defendant, and it was also admitted that he had not been divorced from his lawful wife when the polygamous marriage was solemnized. The only defense urged by appel-

---

[1] *State* v. *Blue,* 53 P. 978, 17 Utah 175.

lant under his plea of not guilty was that he entered into the second marriage in good faith under the honest belief, induced by what he believed to be credible information, that his lawful wife had procured a divorce. Much evidence was offered by defendant to prove his good faith in that respect, but upon objection by the district attorney the offered evidence was rejected by the court on the ground that it was irrelevant and immaterial. The court based its ruling upon the ground that the good faith and intention of the accused is not a defense under the statute of this state making polygamy a crime. The statute referred to (Comp. Laws Utah 1917, § 8086) reads as follows:

"Every person who has a husband or wife living, who hereafter marries another, whether married or single, and any man who hereafter simultaneously, or on the same day, marries more than one woman, is guilty of polygamy, and shall be punished by a fine of not more than $500, and by imprisonment in the state prison for a term of not more than five years; but this section shall not extend to any person by reason of former marriage whose husband or wife by such marriage shall have been absent for five consecutive years, and is not known to such person to be living, and is believed by such person to be dead, nor any person by reason of any former marriage which shall have been dissolved by a valid decree of a competent court, nor to any person by reason of any former marriage which shall have been pronounced void by a valid decree of a competent court, on the ground of nullity of the marriage contract."

The court instructed the jury, in effect, that the defendant had offered evidence which if admitted might tend to show good faith on the part of defendant, but that such evidence had been excluded upon the theory that good faith on the part of defendant at the time of his second marriage was no defense, and that the jury should not consider such evidence. With this statement on the part of the court, it will not be necessary to state the evidence offered by defendant with the same detail that might have been necessary if such instruction had not been given. The evidence offered was concerning matters communicated to defendant before his second marriage and was to the effect that he had received a letter

from his wife in California informing him that she had filed a complaint in that state against him for divorce; also that defendant had received a letter from the clerk of the superior court of Orange county, Cal., to the effect that defendant's lawful wife had commenced an action against him for divorce; also that defendant's lawful wife had returned to Utah and had demanded possession of certain property belonging to defendant, claiming that she had been divorced from defendant and the property had been awarded to her in the final decree; that defendants' lawful wife had been introduced to a witness by one De Fries as the wife of De Fries, she at the time informing the witness that she had been divorced from defendant. Finally, defendant offered to prove that he had received information from numerous people living in Eureka that De Fries and Mrs. Hendrickson were living together in Eureka as husband and wife and that they had made the statement that Mrs. Hendrickson had been divorced from defendant.

We have now stated the main features of the offered evidence upon which defendant relied to establish his innocence. As before stated, the evidence was rejected on the ground that it was irrelevant and immaterial under the statute making polygamy a crime. The rejection of the evidence offered is assigned as error and is the principal question to be determined on this appeal.

Counsel for appellant quotes and relies on the following passage from Wharton, Crim. Law, by Kerr (11th Ed.) § 2060, found in volume 3:

"Credible information to the effect that the first wife had obtained a divorce, raising in the husband an honest belief in that fact, induced by reasonable diligence to ascertain the truth, constitutes a complete defense to a charge of bigamy for having remarried."

While the excerpt quoted appears to the writer as being at least a humane rule, especially in felony cases, unfortunately it is not supported by the only authority cited in the note. *Reynolds* v. *State*, 78 N. W. 483, 58 Neb. 49. The case cited by Wharton was a bigamy case. The only language in

the opinion in that case that appears to have any relevancy to the question under consideration appears on page 484 (58 Neb. 51), where the court says:

"There are, it is true, cases which hold that an honest belief in the death of a former husband or wife, when such belief is reasonably grounded, is a defense to a prosecution for bigamy; but, if the doctrine of these cases is sound, *which we do not concede,* it has no application whatever to the facts of this case." (Italics ours.)

In view of that statement it can hardly be contended that the Reynolds Case supports the rule announced by the distinguished author above referred to.

Appellant also quotes the following from 2 *Cyc. Crim. Law,* Brill § 1130:

"The statutes do not require any specific criminal intent in bigamy, but all that is necessary is that a party shall intentionally marry again when he knows he is already legally married to another person.

"The cases are in conflict as to whether a bona fide belief that the former spouse is dead will constitute a defense to a charge of bigamy."

The notes referred to by the author show the great majority of cases against appellant's contention.

In *Chapman* v. *State,* 179 S. W. 570, 77 Tex. Cr. R. 591, the fourth headnote reflects the opinion and holding of the court:

"One who marries another under the honest belief that he has been divorced * * * is not guilty of bigamy."

Note 18 referred to in the text quoted from Brill mentions numerous cases from which it appears that the great majority of the cases in this country are opposed to the rule that honest belief in the death or divorce of the lawful spouse is a defense to a prosecution for bigamy.

Counsel for appellant also quotes from 7 C. J., at page 1165, the following:

"In a number of jurisdictions it is held that an honest belief, reasonably entertained, that a valid divorce has been granted, will constitute a defense to a prosecution for bigamy."

The passage just quoted is, however, immediately followed by the author in the same paragraph by the following statement:

"The weight of authority, however, is to the contrary. The view being taken [that] where a statute has fixed the exceptions, it must be held to exclude other exceptions not named."

*Baker* v. *State,* 126 N. W. 300, 86 Neb. 775, 27 L. R. A. (N. S.) 1097, cited by appellant, is very much in point. The second headnote states the rule announced by the court:

"In a prosecution for bigamy, when it appears that the first wife is still living, it is erroneous to exclude evidence offered by the defendant tending to show that prior to his second marriage he was credibly informed that his first wife had obtained a divorce, and that he had sufficient reason to believe and did believe the information so received, and relied thereon in good faith."

The annotation as reported in L. R. A. supra, is illuminating. Many cases are cited and reviewed. It is impracticable for us to review them here. The great majority of them opposed the rule permitting honest belief as a defense.

Appellant quotes the following from 3 R. C. L., p. 802:

"According to the weight of authority in this country the fact that one charged with bigamy believes in good faith that he has been lawfully divorced from his first wife constitutes no defense. The theory seems to be that the statutes are so drafted as to cause persons about to marry to take no chance on the question. The statute requires them to know the facts. In this view care and diligence of the defendant to ascertain whether the former marriage has in fact been dissolved by divorce and the reasonableness of his mistaken belief could not aid a defense based on such belief. The statutes usually contain an express grant of immunity where a divorce has been obtained and this of itself is evidence that the lawmakers intended to insist on the divorce itself as a defense and that no further exceptions should be engrafted on it by the courts. According to this doctrine a bona fide belief that the former marriage has been dissolved by divorce is no defense. The opposite view has, however, found favor on the general theory that when a man is misled concerning facts, without his own fault or carelessness, and when so misled acts as he would be justified in doing were the facts as he believes them to be, he is legally and morally innocent. This is, however, predicated

on the greatest care in ascertaining the facts in regard to the divorce. Rumors or statements of persons having no special means of knowledge are insufficient. This question must be distinguished from the entirely different situation which arises where the defendant knows that a divorce has been obtained and mistakenly believes it to be legal. This is a mistake in law, as distinguished from a mistake in fact, and clearly can be no defense."

Many cases are cited in the note in support of the rule that honest belief is no defense however well grounded, if the fact is otherwise. Only one case is cited in support of honest belief as a defense—*Baker* v. *State,* to which we have referred.

The Attorney General, for the state, cites *Staley* v. *State,* 131 N. W. 1028, 89 Neb. 701, 34 L. R. A. (N. S.) 618; *State* v. *Zichfeld,* 46 P. 802, 23 Nev. 304, 34 L. R. A. 784, 62 Am. St. Rep. 800; *People* v. *Priestly,* 118 P. 965, 17 Cal. App. 171. These cases support the contention of the state.

In the Nevada case, supra, the bigamy statute is very similar to ours. After referring to and overruling a former decision of the court and quoting the bigamy statute, the court, at page 805 (23 Nev. 316), says:

"There is no intent involved in this case, except the doing of the thing forbidden to be done by the statute. 'Whatever one voluntarily does, he, of course, intends to do. If the statute has made it criminal to do any act under peculiar circumstances, the party voluntarily doing that act is chargeable with the criminal intent of doing it.' "

As illustrative of one important reason assigned by many of the courts for rejecting the defense of honest belief in this class of cases, we quote from the case of *Commonwealth* v. *Mash,* 7 Metc. (Mass.) at page 473:

"It appears to us that in a matter of this importance, so essential to the peace of families and the good order of society, it was not the intention of the law to make the legality of a second marriage, whilst the former husband or wife is in fact living, depend upon ignorance of such absent party's being alive, or even upon an honest belief of such person's death. Such belief might arise after a very short absence. But it appears to us that the Legislature intended to prescribe a more exact rule, and to declare, as law, that no one should have a right, upon such ignorance that the other party is alive, or even upon such honest belief of his death, to take the risk

of marrying again, unless such belief is confirmed by an absence of seven years, with ignorance of the absent party's being alive within that time."

As the case is more than ordinarily instructive in showing the trend of judicial thought, in opposition to the contention of appellant, we quote further from the same case, at page 474:

"It was urged in the argument that, where there is no criminal intent, there can be no guilt; and, if the former husband was honestly believed to be dead, there could be no criminal intent. The proposition stated is undoubtedly correct in a general sense; but the conclusion drawn from it, in this case, by no means follows. Whatever one voluntarily does, he, of course, intends to do. If the statute has made it criminal to do any act under particular circumstances, the party voluntarily doing that act is chargeable with the criminal intent of doing it. On this subject, the law has deemed it so important to prohibit the crime of polygamy, and found it so difficult to prescribe what shall be sufficient evidence of the death of an absent person to warrant a belief of the fact, and, as the same vague evidence might create a belief in one mind and not in another, the law has also deemed it wise to fix a definite period of seven years' continued absence, without knowledge of the contrary, to warrant a belief that the absent person is actually dead. One therefore who marries within that time, if the other party be actually living, whether the fact is believed or not, is chargeable with that criminal intent, by purposely doing that which the law expressly prohibits."

The defendant in the case just reviewed was a woman and the case was one of extreme hardship, so much so that the rendition of sentence was delayed until finally she was pardoned by the Governor and pleaded her pardon in bar of the sentence.

Many of the decisions recognize the hardship attending some of the cases, but adhere strictly to the statute recognizing only the exceptions therein stated and suggesting executive clemency as the only remedy.

The reason for the rule, denying such defenses, that appeals most strongly to me, in this class of cases, is that any other rule would do violence to well-established rules in construing statutes. It is said by the author of Lewis' Sutherland, Statutory Const. (2d Ed.) § 494:

"An express exception, exemption or saving excludes others. Where a general rule has been established by statute with exceptions, the court will not curtail the former nor add to the latter by implication."

The Utah statute making polygamy a crime enumerates the defenses to which a person charged with the crime is entitled. The enumeration excludes all others. The rule referred to is an important one, and should not be disregarded without cogent reasons therefor. The interpretation of the statute urged by appellant violates not only the rule above quoted, but it also violates the fundamental rule recognized in every jurisdiction of the country that words and phrases are construed according to the context and the approved usage of the language. Except in the case of technical words and phrases, they must be construed according to their plain and ordinary meaning. It is true that technical rules of construction are sometimes properly disregarded, especially where it is manifest, when the subject of legislation considered from all points of view is such as to convince the understanding, that the Legislature could not have intended a literal interpretation.

The case of *State v. Blue*, 53 P. 978, 17 Utah, 175, is a striking example. Blue was treasurer of Eureka City and was charged under Comp. Laws Utah 1888, § 4603, subd. 1, with the crime of appropriating public money to his own use. The statute simply made it a crime for an officer charged with the receipt, safe-keeping, transfer, or disbursement of public money, to appropriate it to his own use or the use of another. There was no exception in the statute, nor were there any words which might imply that good faith or honest intention in doing the prohibited act could be interposed as a defense. Notwithstanding that fact and the rule of construction last above referred to, this court reversed the judgment against the defendant, for the reason that the court below refused to charge as requested by defendant that before the jury could convict it must find that the defendant committed the act charged with intent to cheat and defraud the city. The opinion appears to be well considered and based upon

fundamental principles. The case would be strongly in point in the instant case in favor of appellant, were it not for the difference in the subjects of legislation and the fact that the statute in that case did not, as in the case at bar, enumerate conditions which would operate as a defense.

If the defense urged by appellant could be permitted in a case of this nature, we are constrained to say in conclusion that under the offer of evidence tendered it ought to have been permitted in the instant case. There is no evidence whatever of bad faith on the part of the defendant. His witnesses were in court ready to testify to the matters stated in the offers. But, as we view the law and the nature of the case, good faith and honest intention were not admissible in defense. It is not fair to presume, in view of the demands made by the enabling act in pursuance of which our Constitution was framed and the pledges made in the Constitution itself respecting this offense, that the Utah Legislature intended to be less rigorous in dealing with the question than were the Legislatures of our sister states. Nor should it be expected, in these circumstances, that the courts of this state will be more liberal than the courts of other states in permitting defenses which by every rule of interpretation appear to have been deliberately excluded.

The judgment of the trial court is affirmed.

GIDEON, C. J., and FRICK, CHERRY, and STRAUP, JJ., concur.