## STATE v. WILLIAM F. LONG

(*March* 10, 1948.)

TERRY and LAYTON, J. J., sitting.

*C. Edward Duffy,* Chief Deputy Attorney-General, for the State.

*Stephen E. Hamilton, Jr.,* for the defendant.

Court of General Sessions for New Castle County.

TERRY, J.:

The defendant, William F. Long, was convicted at the November Term for having violated the provisions of Paragraph 5254 of the Revised Code of Delaware 1935. The pertinent language thereof being, "Whoever, having contracted marriage, shall, in the lifetime of his or her husband or wife, marry with another person * * * he or she shall be deemed guilty of bigamy."

Upon the announcement of the verdict the defendant moved for an arrest of judgment and a new trial. Of the reasons filed we find but three that merits our consideration.

1. That we erred in refusing to direct a verdict of not guilty on the ground that the Arkansas decree of divorce previously obtained by the defendant was entitled to full faith and credit under the laws of this State.

2. That we erred in refusing to direct a verdict of not guilty for the reason that we should have recognized the Arkansas decree of divorce on the basis of comity.

3. That we erred in refusing to direct a verdict of not guilty on the ground that there was a reasonable mistake in the application of the law to the facts, thus eliminating the presence of a criminal mind on the part of the defendant.

The State produced evidence to prove that on the 13th day of May, 1915 the defendant married Della Schleif, and on the 25th day of January, 1947, Della Schleif Long then living, the defendant married Myrtle Barry in this City (Wilmington).

Upon the conclusion of the State's case the defendant offered in evidence a copy of a decree of divorce, which he said he obtained from the Chancery Court of Garland County, Arkansas, on the 7th day of January, 1947.

The State objected to the admission of the Arkansas decree upon the ground that the Chancery Court of Garland County never acquired the necessary jurisdiction to render the same, as neither the defendant nor his first wife, Della Schleif Long, ever surrendered their domicil in this State and acquired a new one in the State of Arkansas. Further, the defendant did not contest the Arkansas action, nor did she enter her appearance in that case.

We admitted the decree in evidence, whereupon the defendant then moved for a directed verdict, contending that the Chancery Court of Garland County in the State of Arkansas was a Court of competent jurisdiction, and that this Court must give full faith and credit to the decree of divorce under the provisions of Paragraph 3525. Section 29, of the Revised Code of Delaware 1935, as amended by Chapter 225, Volume 45 Laws of Delaware, the pertinent part thereof being, "Full faith and credit shall be given in all the Courts of this State to a decree of * * * divorce by a court of competent jurisdiction in another State * * *."

The defendant urged that the phrase "a court of competent jurisdiction", as indicated under Chapter 225, means a Court having the right to exercise judicial power over a class of cases, not the particular case before it, and that any Court having general authority to hear and determine divorce cases such as the Chancery Court of Garland County is a Court of competent jurisdiction.

The State contended that the provisions of Chapter 225 are merely declaratory of the provisions of Article 4, § 1, of the full faith and credit clause of the Federal Constitu-

tion ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. * * *"), under which, as applied to the present case, the jurisdiction of the Chancery Court of Garland County can be inquired into in this proceeding, and, if found to be wanting, the decree of divorce rendered by it on the 7th day of January, 1947 would not be given full faith and credit. The State contended that the phrase "a court of competent jurisdiction" means a Court having power and authority of law at the time of acting to do the particular act; one that has jurisdiction both of the person and the subject matter; one that has power and authority conferred upon it by law to hear and determine a particular application and whose jurisdiction it is proper to invoke in that instance. 21 *C.J., P.* 35, 37, 39; 30 *C.J.S., Equity,* § 20; *Huberman v. Evans,* 46 *Neb.* 784, 65 *N.W.,* 1045; *Eldredge v. Eldredge,* 128 *Pa. Super.* 284, 194 *A.* 306; *Ainscow v. Alexander,* 28 *Del. Ch.* 545, 39 *A. 2d* 54.

The defendant in his argument admitted that the phrase "a court of competent jurisdiction," as employed under Chapter 225, is susceptible to each of the interpretations as above indicated; nevertheless, he says we should adopt the definition as announced by him, notwithstanding that to do so would have the effect of surrendering our public policy to that of the foreign jurisdiction.

██ The defendant's motion for a directed verdict was denied, and we find no error in our ruling in this respect. This is so for the reason that an action for divorce is more than an action in personam. It has the general characteristics of an action in rem, and domicil, immaterial to jurisdiction in a personal action, is essential to the proper entry of a decree of divorce. A Court, therefore, in order to be one of competent jurisdiction under the provisions of Chapter 225, must not only have jurisdiction over the

person, but jurisdiction over the subject matter as well. The subject matter in a divorce action is the status of the parties. The action is analogous to an action in rem where the Court must have jurisdiction of the res, which in a divorce action is dependent upon domicil at the time the decree of divorce is rendered.

In admitting that the expression "competent jurisdiction" as used in the statute is capable of two interpretations, defendant's counsel necessarily concedes the existence of an ambiguity calling for judicial construction. If such be necessary, which we think it is not, we conclude that the Legislature in enacting Chapter 225 did not surrender the long settled policy of this State respecting a subject of such vital importance as the marriage status of its citizens. If such a drastic departure were intended by the provisions of Chapter 225, then it should have been drawn in language admitting of no doubt.

In our opinion Chapter 225 is merely declaratory of the provisions of Article 4, § 1, of the full faith and credit clause of the Federal Constitution. Therefore, divorce being analogous to an action in rem the jurisdiction of the Chancery Court of Garland County, Arkansas, to grant such decree can be, and properly was, the subject of inquiry by this Court. The Jury in this case has found that the defendant was not domiciled in Arkansas when he received his decree of divorce. Accordingly, full faith and credit cannot be extended thereto.

Insofar as the second reason is concerned, it should suffice to say that the doctrine of comity is never invoked when its application would contravene the announced public policy of a State.

The substantive question presented under the third reason is, "Did we err in refusing to permit the defendant

to show that he had good grounds for believing that he had obtained a legal divorce from his first wife, thus eliminating the presence of a criminal mind as of the time of his second marriage?"

The Arkansas decree of divorce having been admitted in evidence the defendant testified in substance as follows: That he and Della Schleif Long lived in Wilmington; that they separated in 1945; that on the 21st day of September, 1946 he went to Arkansas to regain his health, to make Arkansas his permanent residence, and to obtain a divorce; that he stayed in Arkansas until November, 1946, when he returned to Wilmington to transact certain business and remain here for the holidays; that he returned to Arkansas and remained there until just before Christmas when he returned to Wilmington for the Christmas holidays, after which he returned to Arkansas and remained in that State until the 7th of January, 1947, the date he received his final decree of divorce. He left Arkansas for Wilmington on the 7th day of January and has remained here since. The defendant admitted under cross-examination that on the 6th day of December, 1946 he applied to the Motor Vehicle Department of this State for a renewal of his registration tags for his motor vehicle for a period ending June 30, 1947, and that while in Wilmington during the Christmas holidays, 1946, he conferred with authorities at the Delaware Hospital in Wilmington regarding future employment at the hospital; that the conferences resulted in his employment, and that he commenced work on the 13th day of January, 1947.

During the course of the defendant's testimony he was asked by his counsel certain questions relating to his good faith and proper motive concerning his second marriage. Each question was objected to. We sustained each objection.

The substance of the testimony offered was—

(1)   The defendant knew his wife was living in adultery, and he thought he could secure a divorce in Delaware.

(2)   The defendant was advised by legal counsel in Delaware that a divorce obtained in Arkansas would be as good as one obtained in Delaware.

(3)   The defendant went to Arkansas to secure his divorce in order not to further embarrass his children.

(4)   The defendant, upon obtaining the Arkansas divorce, went to his Delaware counsel and was advised by said counsel that he might legally marry.

(5)   The defendant's Delaware counsel appeared with him and signed his second marriage application before the Clerk of the Peace in and for New Castle County as guarantor.

We concluded at the trial that such testimony, even though established, was not material or relevant, for the reason that the mistake was one of law and not one of fact, and, if the Arkansas decree of divorce was invalid by reason of the want of jurisdiction, the defendant's motive and good faith as the same related to his second marriage, whatever they be, would be of no import in the present case.

The defendant contends that we should have admitted his evidence relating to his good faith and proper motive and charged the Jury as follows: "If they believed from the evidence that the defendant had been informed by his attorney that he had a legal divorce, and that he was free to marry again, and that he had used due care and made due inquiry to ascertain the truth, and had, concerning all the circumstances, reason to believe, and did believe at the time of his second marriage, that his former wife had been divorced from him, then they should find for the defendant."

Under Paragraph 5254 of the Code of 1935 our Legislature has defined the crime of bigamy as follows: "Whoever, having contracted marriage, shall, in the lifetime of his or her husband or wife, marry with another person, or if any unmarried person shall marry with a person having at the time a husband, or wife living, and such fact be known to such unmarried person, he or she shall be deemed guilty of bigamy * * *."

Under the second paragraph of Section 5255 the Legislature has provided additional defenses in the form of exceptions that may be interposed: "But no person shall be convicted of bigamy if the husband, or wife, at the time of the second marriage, shall have been absent for five years, and during that time the accused shall have received no intelligence of his or her being alive, or if there shall have been other good ground to believe the former husband or wife dead, or if the former marriage have been legally dissolved."

■■ The defendant concedes the general principle of law to be that whatever one voluntarily does he intends to do, and, if a statute has made it criminal to do an act under particular circumstances, the party voluntarily doing that act is chargeable with the criminal intent of doing it; nevertheless, he says, in the present case, irrespective of the validity of the Arkansas decree of divorce, that he should have been permitted to produce testimony to show that he contracted the second marriage in the honest belief that the first one had been legally dissolved by a decree of divorce, thus negativing the implication of the presence of a criminal mind at the time of the second marriage. In other words, the defendant contends he made a reasonable mistake in applying the law to the facts; hence, he did not have a criminal mind. In support of his position the defendant has cited the following cases: *Baker v. State,* 86 *Neb.* 775,

126 *N.W.* 300, 27 *L.R.A. (N. S.)* 1097; *State v. Cain,* 106 *La.* 708, 31 *So.* 300; *Squire v. State,* 46 *Ind.* 459; *Robinson v. State,* 6 *Ga. App.* 696, 65 *S.E.* 792; *Reg v. Tolson,* 23 *Q.B. Div.,* 168; 3 *Harvard Law Review,* 180; 7 *C.J.,* 1165, *Note* 4; 10 *C.J.S., Bigamy,* § 7; 22 *Harvard Law Review,* 75; 1 *Bishop Cr. Law, Paragraph* 311.

The State contends that where the Legislature has announced its policy relative to a certain crime, and has also enacted express exceptions thereto, a Court does not have authority of law to enlarge upon or subtract from the exceptions as declared. The State urges that the voluntary doing of the act implies the intent necessary for the establishment of guilt, and that the defendant's defense in the present case must be confined to his ability to establish that his Arkansas decree of divorce resulted in a legal dissolution of his marriage to his first wife, and not that he thought it did, or that he contracted his second marriage under such a belief.

We find the overwhelming weight of authority to be that in a prosecution for bigamy, under enactments containing exceptions in favor of persons who have been lawfully divorced, a bona fide belief that a legal divorce has been granted affords the accused no defense, the reason being that the Legislature having fixed the exceptions the Courts cannot extend them to persons who have not been, but who in good faith believed they have been, lawfully divorced. Further, if the pretended decree of divorce upon which the person relies is in fact illegal and void because made by a Court having no jurisdiction, it affords no protection against the consequences of a second marriage whatever may have been the defendant's motive or his belief in respect to the validity of the decree, since his mistake or ignorance, if any, was one of law and not of fact. His case is one to which the maxim "ignoranti juris non excusat"

applies. *State v. Hendrickson*, 67 *Utah.* 15, 245 *P.* 375, 57 *A.L.R.* 786; *Ellison v. State*, 100 *Fla.* 736, 129 *So.* 887; *Davis v. Commonwealth*, 13 *Bush, Ky.*, 318; *People v. Spoor*, 235 *Ill.* 230, 85 *N.E.* 207, 126 *Am.St.Rep.* 197, 14 *Ann. Cas.* 638; *R. V. Brinkley*, 14 *Ont.L.Rep.* 434; *Eldridge v. State*, 126 *Ala.* 63, 28 *So.* 580; *Rogers v. Commonwealth*, 68 *S.W.* 14, 24 *Ky. Law Rep.* 119; *Rice v. Commonwealth*, 105 *S.W.* 123, 31 *Ky. Law Rep.* 1354; *State v. Armington*, 25 *Minn.* 29; 7 *C.J.*, 1165; 10 *C.J.S., Bigamy*, §7; 3 *R.C.L.* 802; 7 *Am. Jur.*, 764; *State v. Zichfeld*, 23 *Nev.* 304, 46 *P.* 802, 34 *L.R.A.* 784, 62 *Am.St.Rep.* 800; *Rex. v. Wheat*, [1921] 2 *K.B.* (*Eng.*) 119; *Russell v. State*, 66 *Ark.* 185, 49 *S.W.* 821, 74 *Am.St. Rep.* 78; *Annotation* 57 *A.L.R.* 393; *People v. Priestly*, 17 *Cal.App.* 171, 118 *P.* 965.

The question is one of first impression insofar as the Courts of this State are concerned. It is one of deep importance. It rightfully concerns the state of mind of many who no doubt honestly believe that they are free to marry by reason of having obtained a foreign decree of divorce.

The Legislature in dealing with the crime of bigamy has clearly expressed that there shall be four exceptions constituting valid defenses in bigamy prosecutions:

(1) When an unmarried person shall marry with a person having at the time a husband or wife living and such fact not be known to such unmarried person.

(2) The absence of a husband or wife for a period of five years, during which time the person deserted shall have received no intelligence of the absent person being alive.

(3) Other good ground to believe the former husband or wife to be dead.

(4) Former marriage legally dissolved.

As we view the law and the nature of the case,

the good faith of the defendant in believing he was legally divorced and free to marry the second time was properly excluded as evidence. The defendant obtained the divorce. He had actual knowledge of all the facts. His mistake, if any, was in believing that the Arkansas decree would be entitled to full faith and credit in this State. In this respect he was wrong. The mistake, if any, was one of law, not of fact, and affords him no defense. It is not proper to presume, in view of the bigamy statute and the exceptions thereto, that our Legislature intended that other and additional exceptions be extended by the Courts of this State, nor should it be thought that this Court should permit a defense to be interposed which by every rule of interpretation appears to have been deliberately excluded.

The defendant's motion for a new trial is denied.