*682 JACK R. MILLER, Circuit Judge.
This appeal, in a case of first impression, is from a judgment[1] of the United States Claims Court based on its holding that Allan Wayne Morton was entitled to recover from the United States accrued amounts of money withheld from his compensation, as a Colonel in the United States Air Force, pursuant to writs of garnishment issued by the Circuit Court for the Tenth Judicial Circuit of Alabama. The case arises under Title 37, United States Code (relating to pay and allowances of the uniformed services), and the Fifth Amendment to the Constitution (prohibiting deprivation of property without due process of law). We affirm.
BACKGROUND
Colonel Morton was born in Alabama in 1934 and lived there until he joined the Air Force in 1957 at the age of 23. In 1954, he married Patricia Kay Morton in Alabama, where their first son was born. The Mor-tons moved to Georgia in 1957; then to Ohio in 1960; to Georgia in 1961; to the Philippines in 1963; and to New York in 1965. A second son was born in 1960. Colonel Morton served in Vietnam from 1968 to 1969, during which time his family lived in Florida. In 1969, after returning from Vietnam, Colonel Morton and his wife bought a home in Virginia, where they lived until September of 1973, at which time they separated pursuant to a written separation agreement. (Colonel Morton had been notified in August of 1973 that his next military assignment would be in Alaska.)
Mrs. Morton and her two sons moved to Alabama on September 16, 1973. Household goods were moved to Alabama at that time using Colonel Morton’s military household goods moving allowance. It was Colonel Morton’s understanding that in order to use his moving allowance for this purpose it was necessary to file his income tax returns for 1973 in Alabama. Accordingly, Colonel and Mrs. Morton filed joint federal and state income tax returns in Alabama for 1973. They also filed a joint state income tax return in Virginia for 1973. For 1974, Mrs. Morton filed individual federal and Alabama income tax returns, refusing to file joint returns with Colonel Morton, who also filed separate returns in Alabama because he hoped to persuade Mrs. Morton to file joint returns with him in order to reduce their tax liability. (Such joint returns would, of course, supersede the previously filed individual returns.) Colonel Morton also filed a 1974 individual state income tax return in Virginia. His income tax returns for 1975 and thereafter were filed in Alaska.
The separation agreement provided, inter alia, that the Virginia home was to be the sole property of Colonel Morton and that he was to make fixed monthly payments to Mrs. Morton for the support of the two children.
On June 1, 1974, Colonel Morton entered into a contract to purchase a permanent home for himself in Anchorage, Alaska. He intended to finance the purchase in part from the proceeds of the sale of the Virginia home. However, he was unable to consummate the Alaska purchase because, contrary to the provisions of the separation agreement, Mrs. Morton refused to sign the deed conveying the Virginia home. In a suit by Colonel Morton to obtain specific performance of the separation agreement, Mrs. Morton succeeded in having the agreement set aside.
Meanwhile, on August 28,1974, Mrs. Morton filed suit in the Circuit Court for the Tenth Judicial District of Alabama for divorce, custody of the two children, support and maintenance for the children, and alimony. Colonel Morton received the suit papers by registered mail on September 17, 1974. Personal service was never effected. Colonel Morton contacted an attorney in the Judge Advocate General’s office at El-mendorf Air Force Base in Alaska who advised him that service by mail was not sufficient to support a money judgment *683 against him. Accordingly, Colonel Morton did not make an appearance in the Alabama suit. Judgment by default was entered against Colonel Morton on August 14,1975. It granted Mrs. Morton a divorce and custody of the two children, and ordered Colonel Morton to pay Mrs. Morton $500 per month “as alimony ... and partial support and maintenance of the ... minor children.”
On December 27, 1976, the Air Force Finance Office at Elmendorf received a writ of garnishment issued by the Register of the Alabama court which sought to garnish Colonel Morton’s pay in the amount of $4100. After receiving notice of the writ, Colonel Morton again sought advice from an attorney in the Judge Advocate General’s office. The attorney assured Colonel Morton that Mrs. Morton could not legally garnish his pay on the basis of the service of process by mail from the State of Alabama. Thereafter, on December 30, 1976, Colonel Morton protested.to the Finance Office that he had paid all his obligations to Mrs. Morton,[2] that he was never properly served in the Alabama suit, that he was neither a resident nor a domiciliary of Alabama, and that the decree of the Alabama court ordering him to pay alimony and child support was void for lack of jurisdiction.
Despite these protests, the Finance Office filed an answer to the writ on January 11, 1977, confessing indebtedness of $4100. That amount was subsequently deducted from Colonel Morton’s pay and was paid to the clerk of the Alabama court. Other subsequent writs were similarly honored by the Finance Office.
On May 26, 1977, Colonel Morton filed this action to recover the amounts he alleges were wrongfully withheld from his military pay.

The Decision Below

The trial court concluded that Colonel Morton was neither a resident nor a domiciliary of Alabama, stating:
When the plaintiff moved to Alaska in May 1974, it was his intention to purchase a home in Alaska and to establish a domicile in that State. He made his intention known at the time to associates.
A change in domicile requires physical presence at the new location, plus an intention on the part of the individual to make the new location his or her home, and the absence of any intention to have a home at a former domicile. Stamer v. United States, 148 Ct.Cl. 482, 490 (1960); cf. Holmes v. Sopuch, 639 F.2d 431, 433 (8th Cir.1981). When these elements concur, the change in domicile is instantaneous. Spurgeon v. Mission State Bank, 151 F.2d 702, 705-06 (8th Cir.), cert. denied, 327 U.S. 782 [66 S.Ct. 682, 90 L.Ed. 1009] (1945).
With respect to the plaintiff, the essential elements for acquiring a new domicile concurred when the plaintiff arrived in Alaska during the month of May 1974. From then until 1977, the plaintiff was an actual resident of Alaska, it was his intention to make Alaska his home, and he lacked any intention to have a home at a former domicile. Accordingly, it necessarily follows that the plaintiff was a domiciliary of Alaska, and not of Alabama, during the 1974-75 period when the divorce proceeding against him in Alabama was in progress.
Next, considering the “minimum contacts” doctrine of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, the trial court concluded that—
it would offend “traditional notions of fair play and substantial justice” if the plaintiff’s contacts with Alabama prior to July 1957 were to be regarded as necessarily conferring jurisdiction on the Alabama courts to enter a money judgment against him some 18 years later, when the plaintiff was a domiciliary and actual resident of Alaska, was not served per *684 sonally within the territorial limits of Alabama, and did not do anything to subject himself to the jurisdiction of the Alabama court.
The third and final question considered by the trial court was whether subsection (f) of the garnishment statute, 42 U.S.C. § 659, as amended by Pub.L. 95-30, § 501, 91 Stat. 157 (1977),[3] grants the Government immunity from suit under the circumstances of this case. This subsection provides:
Non-liability of United States, disbursing officers, and governmental entities with respect to payments
Neither the United States, any disbursing officer, nor governmental entity shall be liable with respect to any payment made from moneys due or payable from the United States to any individual pursuant to legal process regular on its face, if such payment is made in accordance with this section and the regulations issued to carry out this section.
“Legal process” is defined in 42 U.S.C. § 662:
Definitions
For purposes of section 659 of this title—
(e) The term “legal process” means any writ, order, summons, or other similar process in the nature of garnishment, which—
(1) is issued by (A) a court of competent jurisdiction within any State, territory, or possession of the United States, (B) a court of competent jurisdiction in any foreign country with which the United States has entered into an agreement which requires the United States to honor such process, or (C) an authorized official pursuant to an order of such a court of competent jurisdiction or pursuant to State or local law, and
(2) is directed to, and the purpose of which is to compel, a governmental entity, which holds moneys which are otherwise payable to an individual, to make a payment from such moneys to another party in order to satisfy a legal obligation of such individual to provide child support or make alimony payments.
The regulations issued to carry out 42 U.S.C. § 659 provide in pertinent part:
(f) “Legal process” means any writ, order, summons, or other similar process in the nature of garnishment, * * * which—
(1) Is issued by:
(i) A court of competent jurisdiction, including Indian tribal courts, within any State, territory, or possession of the United States, or the District of Columbia * *.
5 C.F.R. § 581.102(f) (1981) (emphasis supplied).
Regarding the question of whether the Government had made payment “pursuant to legal process regular on its face” and was, therefore, provided with immunity under 42 U.S.C. § 659(f), the trial judge concluded:
As the decree of the Alabama court was void for lack of jurisdiction insofar as it ordered Colonel Morton to make alimony and child support payments to Patricia Kay Morton, the writs of garnishment must necessarily fall along with the portion of the decree on which they were based. Laborde v. Ubarri, 214 U.S. 173, 174 [29 S.Ct. 552, 53 L.Ed. 955] (1909).
*685 As the Alabama court, in purporting to order Colonel Morton to make alimony and child support payments to Patricia Kay Morton, was not a “court of competent jurisdiction” because it had not acquired jurisdiction over the person of Colonel Morton, the void ancillary writs of garnishment which the Air Force Finance Office honored in this case did not constitute the sort of “legal process” that would have insulated the Government against liability.
ANALYSIS

Immunity

As quoted above, 42 U.S.C. § 662 defines “legal process” to require that it be issued by a court of competent jurisdiction. There is no legislative history to guide us in interpreting the phrase “competent jurisdiction,” but we may assume that Congress was aware that garnishment, a form of attachment, is merely an incident to a suit, and unless the suit can be maintained the garnishment must fail.[4] Accordingly, we conclude that process issued by a court in an ancillary garnishment proceeding against the Government does not satisfy the statutory and regulatory requirements if that court was not a court of competent jurisdiction over the underlying suit.
The point can also be made that where the judgment in the underlying suit is void, the “legal obligations” requirement of 42 U.S.C. § 659(a) is not satisfied. Similarly, Regulation 581.102(g) defines “legal obligation” to mean an obligation “which is enforceable under appropriate State or local law.” (Emphasis added.) Obviously a void judgment would not meet this requirement.
With respect to whether 42 U.S.C. § 659(f) provides the Government with immunity from suit under the facts of this case, it must be determined whether “competent jurisdiction” in the statute (42 U.S.C. § 662(e)(1)) and regulations (5 C.F.R. § 581.102(f)) means only subject matter jurisdiction or both subject matter and personal jurisdiction; further, whether the immunity statute’s provision that legal process be “regular on its face” permits the Government to escape liability notwithstanding notice of substantial questions over regularity. Colonel Morton argues that the Government is immune from suit only if payment is made by the United States “pursuant to legal process” and if that payment is made “in accordance with ... the regulations issued to carry out [that] section.” 42 U.S.C. § 659(f). He contends that, because “a court of competent jurisdiction” is one having both subject matter jurisdiction and personal jurisdiction, citing Robinson v. At-tapulgus Clay Co., 55 Ga.App. 141, 189 S.E. 555 (1937), and State v. Long, 44 Del. 251, 59 A.2d 545 (1948), rev’d on other grounds, 44 Del. 262, 65 A.2d 489 (1949), the Government cannot be immune from suit in this case unless the Alabama court had personal jurisdiction over him in the underlying suit for divorce, support, and alimony.
The Government objects to this interpretation, arguing that to so limit the Government’s immunity would place an intolerable burden on the executive branch and would cause an administrative nightmare that Congress could never have intended. The Government further argues that case law uniformly interprets the statute to preclude looking into the validity of the underlying judgment so long as the writ of garnishment is “regular on its face.”
However, the cases relied upon by the Government, beginning with Popple v. United States, 416 F.Supp. 1227 (W.D.N.Y. 1976), and including Craft v. Craft, No. *686 77-1205 (W.D.Okl. Feb. 16, 1979), involved the question of whether a federal district court had subject matter jurisdiction under 42 U.S.C. § 659 to entertain a challenge to a writ of garnishment issued pursuant to that statute. In Overman v. United States, 563 F.2d 1287 (8th Cir.1977), the plaintiffs attempt to challenge garnishment of his salary was based on the allegation that the underlying Tennessee divorce decree had been obtained by fraud — not on lack of personal jurisdiction. In Cunningham v. Dept. of Navy, 455 F.Supp. 1370 (D.Conn. 1978), the plaintiff based his challenge to the garnishment of his disability retirement pension on the alleged unconstitutional application of the New York “long-arm” statute. In Jizmerjian v. Dept. of Air Force, 457 F.Supp. 820 (D.S.C.1978), aff’d mem., 607 F.2d 1001 (4th Cir.1979), cert. denied, 444 U.S. 1082, 100 S.Ct. 1036, 62 L.Ed.2d 766 (1980), the court looked to the facial validity of the legal process (garnishment) and did not even mention, much less consider, the requirement in 42 U.S.C. § 662 that such process be issued by a court of competent jurisdiction. In Calhoun v. United States, 557 F.2d 401 (4th Cir.), cert. denied, 434 U.S. 966, 98 S.Ct. 509, 54 L.Ed.2d 453 (1977), the decision in the court’s brief per curiam opinion, which noted the facial validity of the underlying divorce judgment, was issued June 21, 1977, after the effective date (June 1, 1977) of the amendments added by Pub.L. No. 95-30, 91 Stat. 159 (May 23, 1977), which included the requirement that legal process regular on its face must be issued by a court of competent jurisdiction. Since the case was argued February 16, 1977, it is apparent that the court did not consider the court of competent jurisdiction requirement, as we have.
We conclude that “competent jurisdiction” in the statute and regulations means both subject matter jurisdiction and personal jurisdiction. A court’s jurisdiction normally encompasses both personal and subject matter jurisdiction, and we see nothing in the cases cited by the Government or in the legislative history suggesting otherwise when the Government’s immunity is involved. In a recent opinion, Lugar v. Edmondson Oil Co., Inc.,-U.S.-, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982), the Supreme Court makes it clear that constitutional requirements of due process have long been applied to garnishment procedures, citing Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Moreover, it has long been the rule that a court cannot adjudicate a personal claim, such as one for alimony or child support, without jurisdiction over the person. Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456 (1957).[5] Alabama law cannot, under the label of “comity” or “indifference” override federal constitutional and statutory requirements.

Jurisdiction

The due process clause of the Fourteenth Amendment places a limitation on the circumstances in which a state may assert personal jurisdiction over a nonresident defendant. The seminal case of International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) established what has since become known as the “minimum contacts” test for personal jurisdiction:
[D]ue process requires only that in order to subject a defendant to a judgment in *687 personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend “traditional notions of fair play and substantial justice.”
The type of contacts necessary to satisfy the due process clause was explained by the Supreme Court in Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958):
The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant’s activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.
Accordingly, the mere fact that Mrs. Morton and the two Morton children moved from Virginia to Alabama following the Mortons’ separation in Virginia was insufficient to invest Alabama courts with personal jurisdiction over Colonel Morton in the underlying suit. Indeed, this very question was treated by the Supreme Court in Kulko v. California Superior Court, 436 U.S. 84, 98 5. Ct. 1690, 56 L.Ed.2d 132 (1978).
In that case, Mr. and Mrs. Kulko were married in California during a three-day stopover while Mr. Kulko was en route from Texas to a military tour of duty in Korea. Subsequently, the Kulkos moved to New York, where they lived until 1972. During that time, two children were born to them. In 1972, the Kulkos separated pursuant to an agreement drawn up in New York which, inter alia, provided for specified joint custody. Mrs. Kulko subsequently secured a Haitian divorce decree which incorporated the terms of the separation agreement, including a provision for child support payments while the children were with their mother. She thereafter moved to California, where she was joined by the two children, who had been living with their father. When she brought an action in California to establish the Haitian decree as a California judgment, to obtain full custody of the children, and to increase Mr. Kulko’s support obligations, Mr. Kulko entered a special appearance to contest jurisdiction on constitutional grounds. The Supreme Court held that Mr. Kulko’s contacts with California were insufficient, as a matter of Fourteenth Amendment due process, to vest the courts of that state with personal jurisdiction over him.[6]
In determining whether, under the particular facts of the instant case, the “quality and nature” of Colonel Morton’s contacts with Alabama enabled the Alabama state court to have personal jurisdiction over him,[7] domicile must be considered. It is well settled that in order to acquire a new domicile, a person must be present in the new location, intend to make that location his home, and have no intent to have a home at a former domicile. Stamer v. United States, 148 Ct.Cl. 482, 490 (1960). The Government contends that Colonel Morton’s acts do not bear out the trial judge’s findings that he had an intent to *688 make a permanent home in Alaska and no intent to return to a former domicile. In particular, the Government points to the fact that Colonel Morton filed income tax returns in Alabama in 1973 and 1974. However, the trial judge found that the reasons for filing in Alabama were connected with the Mortons’ separation and the presence of Mrs. Morton in Alabama, and that such filing did not reflect Colonel Morton’s intent to return to Alabama, to derive any benefit or protection from the laws of that state, or to not make Alaska his home. We are satisfied that the trial judge’s findings are sufficiently supported by the record.[8] Thus, we conclude that Colonel Morton was domiciled in Alaska on August 28, 1974.[9]
Next, we regard as de minimis Colonel Morton’s having once lived in Alabama more than 17 years before institution of the divorce suit. This conclusion is well supported by Lightell v. Lightell, 394 So.2d 41 (Ala.Civ.App.1981), in which the court held that the lower court (Circuit Court, Montgomery County — Fifteenth Judicial Circuit) did not have in perspnam jurisdiction over the husband required to render a determination of paternity and a personal judgment for child support, alimony, attorney fees, and division of out-of-state property. The parties had separated while living in North Carolina. Thereafter, the wife moved to Alabama, and the husband traveled about pursuant to his career and currently resided in the Canal Zone. The wife sued for divorce and other relief, most of which was granted by the lower court. Although upholding the lower court’s granting of the divorce, the Alabama appellate court said, regarding the other relief:
In the present case, to put it succinctly, the defendant has never conducted any activity in the State of Alabama. Nothing in the record would suggest that any basis for the exercise of in personam jurisdiction over him in Alabama would exist.... Plaintiff ... asserts that Alabama’s strong interest in protecting the welfare of the minor child provides the sufficient “minimum contact.” While this interest is unquestionably important, it simply does not make Alabama a fair forum in which to require the husband, who derives no personal or commercial benefit from the child’s presence in Alabama, and who lacks any other relevant contact with the state, to defend a paternity determination therein. Kulko v. Superior Court of California, ... 436 U.S. at 100, 98 S.Ct. at 1701. The unilateral activity of the wife in moving to Alabama cannot satisfy the requirement of the husband’s “minimum contacts” with the forum state. It is essential in each case that there be some act by which the defendant purposely avails himself of the privilege of conducting activities in the forum state. Hanson v. Denckla, 357 U.S. 235 [78 S.Ct. 1228, 2 L.Ed.2d 1283]
Finally, using a quasi in rem theory, the Government attempts to justify jurisdiction on the basis that Colonel Morton’s salary, upon which Mrs. Morton and the children relied for support, was present in Alabama or, at least, subject to the jurisdiction of Alabama. This fails for two reasons: First, the suit was brought against Colonel Morton — not against his salary, which was not located in Alabama under that state’s law. Louisville & N.R. Co. v. Nash, 118 Ala. 477, 23 So. 825 (1898). Second, even if his salary were considered to be located in Alabama, this would not support jurisdiction in view of the Supreme Court’s admonition in Shaf *689 fer v. Heitner, 433 U.S. 186, 209, 212, 97 S.Ct. 2569, 2582, 2584, 53 L.Ed.2d 683 (1977):
[Although the presence of the defendant’s property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the State’s jurisdiction. If those other ties did not exist, cases over which the State is now thought to have jurisdiction could not be brought in that forum.
... [A]ll assertions of state-court jurisdiction must be evaluated according to the standards set forth in International Shoe and its progeny. [Footnote omitted.]
See also State Tax on Foreign-Held Bonds, 82 U.S. 300, 320, 21 L.Ed. 179 (1872) (“All the property there can be ... in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due.”)[10]
Accordingly, we conclude that Colonel Morton’s contacts with the State of Alabama were too tenuous and insubstantial to support personal jurisdiction of the Alabama state court consistent with the “traditional notions of fair play and substantial justice” required to meet the test of due process under the Fourteenth Amendment to the Constitution. International Shoe Co. v. Washington, 326 U.S. at 316, 66 S.Ct. at 158.
From the foregoing, it follows that the writs of garnishment issued by the Alabama state court were not issued by a “court of competent jurisdiction” as required by 42 U.S.C. § 662(e) and, therefore, did not constitute “legal process” for purposes of 42 U.S.C. § 659. To hold otherwise and to require (as would the dissent) Colonel Morton, a resident of Alaska, to proceed in the Alabama state court against Mrs. Morton would, in effect, render those statutes violative of constitutional due process, contrary to the principle that a court should construe legislative enactments to avoid constitutional difficulties if possible. United States v. Clark, 445 U.S. 23, 34, 100 S.Ct. 895, 903, 63 L.Ed.2d 171 (1980); United States v. Harriss, 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954); Blasecki v. City of Durham, 456 F.2d 87, 93 (4th Cir.), cert. denied, 409 U.S. 912, 93 S.Ct. 224, 34 L.Ed.2d 172 (1972), This is particularly so where, as here, there is no legislative history of the statutes suggesting a contrary interpretation.
At the same time, we hold that the immunity provisions of the garnishment statute permit the Government, where the process document is regular on its face, to make payment without liability on a presumption that the underlying judgment is valid,[11] but that such a presumption is rebuttable by a showing that the Government had notice of a substantial claim of jurisdictional irregularity.[12] That is the case here. The Department of the Air Force, through its Finance Office at Elmendorf, had information sufficient to give notice of apparent lack of personal jurisdiction in the Alabama court in the underlying suit. The record supplied to the Finance Office by Colonel Morton included an affidavit executed by Mrs. Morton upon instigation of her suit admitting that Colonel Morton was at that time a “nonresident” of Alabama. Also, the trial judge found that, unlike the situation in the Calhoun case, the State of Alabama had no “long-arm” statute at the time *690 of filing of the suit by Mrs. Morton which enabled it to exert personal jurisdiction for alimony or child support over nonresidents solely by service of process by registered mail.[13]
The Finance Office disregarded the information showing jurisdictional irregularity in the underlying Alabama suit. This was exacerbated by the fact that Colonel Morton’s position was based on advice from the Department’s Judge Advocate’s Office at Elmendorf. Our conclusion that the presumption, that a process document regular on its face is supported by a valid underlying judgment, is rebuttable places no greater burden on the Government in this case than that already assumed by it when, through the base Judge Advocate’s Office, it responded to Colonel Morton’s request with legal advice based on information sufficient to rebut the presumption that the judgment in the underlying suit was valid. We are not persuaded by the Government’s argument that, were we to hold in Colonel Morton’s favor, on the facts of this case, the result would be an administrative nightmare. (See second paragraph of note 14, infra.)
Accordingly, the Government is liable under the Fifth Amendment to the Constitution for monies wrongfully paid pursuant to the Alabama court’s writs, said monies being those which had accrued to Colonel Morton under Title 37, United States Code.
The judgment of the Claims Court is affirmed, and the cause is remanded for a determination of quantum.[14]
AFFIRMED.

. Entered October 8, 1982, pursuant to this court’s order of October 4, 1982, and corresponding to the decision recommended by the trial judge in his opinion filed December 14, 1981.

. At trial, Colonel Morton introduced evidence that, although the separation agreement had been set aside, he had continued to make support payments ($500 per month) to Mrs. Morton because he felt a moral obligation to do so; further, that at the time the writ was served, his oldest son was no longer a minor and was married.

. 42 U.S.C. § 659(a) allows the United States to be served with legal process for the enforcement of its employees’ legal obligations to provide child support and alimony, thus:
United States and District of Columbia to be subject to legal process
Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to an individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

. Big Vein Coal Co. v. Read, 229 U.S. 31, 38, 33 S.Ct. 694, 696, 57 L.Ed. 1053 (1913); Laborde v. Ubarri, 214 U.S. 173, 29 S.Ct. 552, 53 L.Ed. 955 (1909); Davis v. Ensign-Bickford Co., 139 F.2d 624, 626 (8th Cir.1944); see also In re Stark, 36 F.2d 280 (W.D.N.Y.1929); Olson v. Field Enterprises Educational Corp., 45 Ala.App. 438, 231 So.2d 763, 765 (Ala.App. 1970) (“Garnishment is an ancillary proceeding, not an original civil suit.”) What the dissent appears to say is that even if the Alabama court was not a court of competent jurisdiction over the underlying suit (in which event its judgment would be void), it was, nevertheless, a court of competent jurisdiction for purposes of the garnishment. Such a narrow reading of the phrase would elevate form over substance, to the deprivation of property without constitutional due process.

. The dissent finds no authority which imposes liability on a private employer (or other garnishee) for failure to undertake the defense of a supplemental garnishment proceeding by attacking the underlying judgment against the judgment-debtor. However, it appears to be well settled that a valid judgment against the defendant is essential to the validity of a judgment against the garnishee. 38 C.J.S. § 244 and cases cited. Also, recovery for wrongful garnishment has been allowed in suits brought by the defendants. 38 C.J.S. § 311 and cases cited. We note, particularly, the case of Betts v. Coltes, 467 F.Supp. 544 (D.Hawaii 1979), where the court made clear that monies erroneously paid over to a judgment creditor may be recovered, and a misuse of process or a failure to correct an erroneous garnishment could entitle an employee to damages from his employ-

. The Court said that “the mere act of sending a child to California to live with her mother ... connotes no intent to obtain or expectancy of receiving a corresponding benefit in the State that would make fair the assertion of that State’s judicial jurisdiction.” 436 U.S. at 101, 98 S.Ct. at 1701. In like manner, Colonel Morton’s contacts with Alabama from 1957 to 1973 were unrelated to state benefits. We are satisfied that he never resumed, or intended to resume, residence or domicile in Alabama and that he did intend to and did acquire such status in Alaska.

. We note that the due process clause of the Fourteenth Amendment does not serve as an independent basis for personal jurisdiction. Rather, “[t]he Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants,” Kulko v. California Superior Court, 436 U.S. at 91, 98 S.Ct. at 1696, serving as a “constitutional limitation on state power.” Shaffer v. Heitner, 433 U.S. 186, 216-17, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977). See also Home Ins. Co. v. Dick, 281 U.S. 397, 410, 50 S.Ct. 338, 342, 74 L.Ed. 926 (1930).

. The Government also contends that statements in letters from Colonel Morton’s attorney infer that Colonel Morton did not intend to remain in Alaska, and that Colonel Morton did not consider Alaska to be his domicile. These factors certainly have relevance in a domicile determination. However, considering all the facts in evidence, we conclude that the trial judge correctly determined that these contentions are not sufficiently persuasive to warrant “any change in the opinion ... that the plaintiff was a domiciliary of Alaska, and not of Alabama, when the divorce proceeding against him in Alabama was in progress.”

. It is also significant that, as related earlier, Mrs. Morton filed an affidavit declaring that Colonel Morton was, at the time of instigation of her suit, a “nonresident” of Alabama.

. This, of course, suggests a further reason for concluding that the Alabama court was not a court of competent jurisdiction, because it lacked jurisdiction over the Government’s debt to Colonel Morton which it sought to garnish.

. Cf. Insurance Corp. v. Compagnie des Baux-ites, 456 U.S. 694, 102 S.Ct. 2099, 2107, 72 L.Ed.2d 492 (1982).

. We need not decide whether a mere nonfriv-olous claim would rebut the presumption that a process document has been issued by a court of competent jurisdiction.

. Trial Judge Finding of Fact No. 31:
In 1974 and 1975, during the pendency of the divorce proceeding instituted by Patricia Kay Morton against Colonel Morton, the State of Alabama did not have a “long-arm” statute authorizing personal service on nonresidents for child custody, child support, or maintenance and support. At that time, the Alabama rule permitting substituted service was limited to the termination of the marital status, in the absence of the necessary “minimum contacts” required for the Alabama court to exercise personal jurisdiction over a nonresident defendant.

. It should be pointed out that the Supreme Court, in Kulko, observed that both California and New York had adopted versions of the Uniform Reciprocal Enforcement of Support Act, which is designed to “facilitate the procurement and enforcement of child-support decrees where the dependent children reside in a State that cannot obtain personal jurisdiction over the defendant.” 436 U.S. at 99, 98 S.Ct. at 1700. The Court reasoned that because “the Uniform Acts will facilitate both [Mrs. Kulko’s] prosecution of a claim for additional support and collection of any support payments found to be owed by [Mr. Kulko] ... it cannot here be concluded ... that resident plaintiffs would be at a ‘severe disadvantage’ if in personam jurisdiction over out-of-state defendants were sometimes unavailable.” Id. at 100 & n. 15, 98 S.Ct. at 1701 & n. 15.
In this case, had the Air Force Finance Office refused to honor the writs of garnishment, Mrs. Morton’s interests were similarly protected, because both Alabama and Alaska had adopted the Uniform Reciprocal Enforcement of Support Act. Ala.Code § 30-4-80 et seq. (1975); Alaska Stat. § 25.25.010 et seq. (1977). We note that all fifty states, the District of Columbia, Puerto Rico, and the Virgin Islands have adopted the Uniform Reciprocal Enforcement of Support Act. Am.Jur.2d Desk Book, Supp. 1982.