**CHAMPION INTERNATIONAL CORPORATION, Plaintiff,**

v.

**David R. AYARS and Gail B. Ayars, Defendants.**

**Civ. No. B 83–707(WWE).**

United States District Court, D. Connecticut.

May 16, 1984.

respect to the relationship between interest and

John Crosskey, Day, Berry & Howard, Stamford, Conn., for plaintiff.

Georgia Von Schmidt, Von Schmidt & Freshman, P.C., Greenwich, Ralph D. Clifford, Stamford, Conn., for Gail Ayars.

Fred Ross, Bruce P. Gudenkauf, pro hac vice, Middletown, Ohio, for David Ayars.

## RULINGS ON PENDING MOTIONS

EGINTON, District Judge.

In this interpleader action, plaintiff Champion International Corporation ("Champion") sought relief from conflicting state court orders growing out of a dispute between the two defendant ex-spouses. Based upon the pleadings and statements filed pursuant to Local Rule 9, the basic facts are not in dispute.

the underlying taxes.

David R. Ayars ("David") and Gail B. Ayars ("Gail") were formerly married, and lived in Connecticut. David was employed at the Stamford facility of Champion. David and Gail were divorced in January, 1983, by decree of the Superior Court of the Judicial District of Stamford/Norwalk. Incorporating a separation agreement entered into by the parties, the court ordered David to make support payments to his children and to Gail. David has been in default of these payments since August of 1983.

Approximately three months after the divorce, in April of 1983, David was remarried to Judith L. Ayars, to whom he is presently married. The following month David was transferred from Champion's Stamford office to a Champion facility in Ohio. Since his transfer, David has been a continuous resident of the state of Ohio.

In August of 1983, David stopped making support payments. The Connecticut Superior Court found him in contempt of its previous order, and issued a wage execution to collect the support payments and arrearage. The wage execution was served on Champion at its principal place of business in Stamford, Connecticut. It ordered Champion to withhold $444.23 per week from David's wages and to pay this amount to Gail Ayars.

David responded by going to court in Ohio, where he obtained an order restraining Champion from complying with the Connecticut wage execution. Champion then began the instant interpleader action, seeking relief from these inconsistent state court orders. The garnished amount of David's wages has been paid every two weeks into court, pending a ruling on its proper disposition.

*Cross-Motions for Summary Judgment*

Two issues are presented by the parties' motions for summary judgment: (1) Whether the Connecticut court properly garnished wages earned and paid in Ohio, and (2) Whether the amount of the wages garnished exceeds the limits in 15 U.S.C. § 1673. The parties agree that the first issue is ripe for summary judgment; however, Gail argues that disputed issues of fact and credibility render summary judgment on the second issue inappropriate.

*Garnishment of out-of-state wages*

The parties do not dispute that the Connecticut state court had *in personam* jurisdiction over Champion, Gail and David at the time of the contempt ruling and wage execution.[1] The only dispute is over the ability of the wage execution to reach wages paid by Champion's Ohio payroll office to an employee whose wages were earned in Ohio. David claims that the wage execution is an impermissible attempt by Connecticut to extend sovereignty into Ohio, since David "receives no salary or payment whatsoever from the offices of the [Champion] Company within the jurisdiction of the State of Connecticut or the Connecticut Superior Court." (David's motion for summary judgment, p. 2)

According to David's argument, a garnishing court must have jurisdiction over the geographical area in which the garnished wages are paid and earned. No authority has been cited in support of this proposition. To the contrary, substantial

---

1. It is important to note that this is not a case in which garnished wages are sought as a basis for quasi-in-rem jurisdiction over a non-resident defendant. No jurisdictional issues are presented in this case. The Connecticut court plainly had jurisdiction of the garnishee, Champion, since Champion is a corporation doing business in Connecticut and with its principal place of business in the state. The Connecticut court had jurisdiction of Gail Ayars, who commenced the enforcement action which resulted in the state court order. Finally, the Connecticut court had jurisdiction of David Ayars, as he admits in his answer. Since the jurisdiction of the state court is not disputed, this court is not called upon to enter the jurisdictional thicket presented by the discussion of *Harris v. Balk,* 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) and the other cases cited in the *amicus curiae* brief filed by the State of Connecticut. *Cf. Libra Bank Ltd. v. Banco Nacional de Costa Rica,* 570 F.Supp. 870, 879 n. 9 (S.D.N.Y.1983) (Under Supreme Court and Second Circuit cases, the *Harris v. Balk case* is valid to the extent that when debtor is sued in court with personal jurisdiction of the debtor, debt has its situs in that jurisdiction.)

authority exists permitting garnishment in situations factually similar to this case. *See, e.g., Garrett v. Garrett,* 30 Colo.App. 167, 490 P.2d 313 (Colorado court's writ of garnishment served on Colorado office of husband's employer, to reach wages of husband transferred from Colorado to Washington office), *petition for reh'g stricken,* 30 Colo.App. 167, 505 P.2d 39 (1971); *Little v. Little,* 34 N.J.Super. 111, 111 A.2d 517 (1954) (New Jersey court order directed toward non-resident husband's funds held by corporate employer authorized to do business in New Jersey, despite fact that husband's salary earned and paid outside New Jersey), *rev'd on other grounds,* 35 N.J.Super. 157, 113 A.2d 524 (1955); *Birl v. Birl,* 48 Del.Co. 387, 24 Pa.D. & C. 421 (Pa.Super.Ct.1961) (To satisfy award of permanent alimony, Pennsylvania court may garnish salary and wages of defendant husband residing outside Pennsylvania and employed at Massachusetts office of corporation, by attachment execution served at corporation's Pennsylvania office). *See also Morris W. Haft Bros. v. Wells,* 93 F.2d 991 (10th Cir.1937) ("It is well settled that a foreign corporation authorized to do business in a state and subject to process therein may be garnished on a debt owing to a nonresident of the state..."); *Mechanics Finance Co. v. Austin,* 8 N.J. 577, 86 A.2d 417 (N.J.1952) (Under statute, wages "earned and paid outside" New Jersey were subject to garnishment by New Jersey court, despite claim that such wages were "not within the 'reach and jurisdiction' of the court"), *rev'g* 11 N.J.Super. 399, 78 A.2d 408 (1951).

■ The court finds no reason of policy or principle in support of David's argument. To the contrary, such a drastic limitation on the ability of courts to enforce their judgments by the garnishment mechanism would have undesirable consequences.

As Gail correctly notes in her able brief, David's argument assumes that in order for a court to issue an order affecting a corporation's actions, it must have physical power over the specific administrative branch which will be responsible for carrying out the terms of the order. Whatever force this argument might have with respect to the branches of a non-corporate business, it cannot apply to the separate parts of a corporate entity. A corporation is a single legal "person." If jurisdiction exists over the corporation, a court need not concern itself with which arm of the corporation will ultimately be responsible for carrying out the court's orders.

If a court were required to give legal effect to internal corporate structure, major practical problems could ensue. A corporation could design its administrative arrangements so as to escape the authority of any court. For example, by establishing its sole payroll office outside the United States, a corporation would, under David's argument, be immune to garnishment orders from any court in the United States, thus preventing the lawful creditors of its employees from obtaining payment through the garnishment process.

Similarly, a requirement that a wage execution be issued only by a court in the area in which the wages are earned would unreasonably burden creditors seeking payment of lawful debts. If a court can garnish only those wages earned within its own state, husbands and other debtors need only move out of state to escape payment.[2] For a former wife deprived of support payments, the alternative of hiring out of state counsel and commencing a new lawsuit is more theoretical than real.[3]

**2.** As Gail points out, David asserts that *all* Champion employees are paid from the Ohio office. Accordingly, under David's argument, the salary of a Champion employee who works in Connecticut could only be garnished by an Ohio court.

**3.** The Uniform Reciprocal Enforcement of Support Act (UFESA) and the Uniform Enforcement of Foreign Judgments Act (UFEJA) assist such a plaintiff in obtaining enforcement from a foreign state's courts. However, the UFESA and UFEJA remedies exist in addition to such remedies as a plaintiff may have by virtue of the law of her own state. Conn.Gen.Stat. § 46b–181 (providing that "the remedies herein provided [in the Uniform Act] are in addition to and not in substitution for any other remedies.") Since Gail chose to pursue a proper Connecticut reme-

For the foregoing reasons, defendant David's motion for summary judgment on this issue is DENIED and Gail's motion is GRANTED

### 15 U.S.C. § 1673

■ Having affirmed the ability of the state court to attach David's wages, the question remains whether the amount of the attachment exceeds the limits in 15 U.S.C. § 1673(b)(2). This section provides:

> The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—
> (A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and
> (B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings.

In other words, the maximum amount subject to garnishment is either 50% or 60%, depending upon whether the debtor is supporting a new family.

A subsequent clause raises each of these maximums 5% where the earnings are garnished to enforce a support order for a period more than twelve weeks before the garnishment period, i.e., for support payments which are in arrears. Under these circumstances, the maximum becomes 55% or 65%, depending upon the support situation.

David argues that he is supporting his new wife and that the 55% figure applies. (He apparently concedes that the 5% arrearage increase is applicable.) Based upon a single pay stub attached to his summary judgment papers, he calculates that this percentage applied to his disposable earnings yields an allowable garnishment of $816.00 per two week pay period. The amount ordered by the Connecticut court, $962.50, exceeds that figure. Accordingly, if David is correct and the 55% figure applies, the Connecticut garnishment exceeds the statutory limits. If, on the other hand, the 65% figure applies, the Connecticut garnishment complies with the statutory limits.

Gail argues that summary judgment on this issue is inappropriate at this stage, since the applicable percentage depends upon a factual determination as to David's income and as to whether or not he supports his new family. Although David and his new wife, Judith L. Ayars, have filed affidavits stating that David is supporting new dependents, Gail disputes this, and seeks an opportunity to test their assertions through discovery.

The court will allow limited discovery between the parties in order to clarify the facts necessary to determine the appropriate statutory percentage. Since the facts concerning David's new family arrangements are exclusively within the control of David and Judith L. Ayars, since David has produced only one pay stub to document his claims as to his earnings (which stub may or may not be representative of all pay periods to which the garnishment order relates), and since an issue has been raised as to the credibility and income of David's new wife, Judith L. Ayars, whose affidavit was filed in support of summary judgment,[4] the court cannot find at this time

---

dy (attachment of earnings paid by Champion to David) the provisions of these statutes and the Full Faith and Credit clause cases relied upon by David are irrelevant.

4. In her papers in opposition to summary judgment on the statutory issue, Gail filed copies of Ohio newspaper articles reporting that one Judith L. Ayars recently pleaded guilty to embezzling over $7,000 from her former employer, the county treasurer. According to the prosecutor's description of the offense, as reported in one article, Judith L. Ayars falsified county records to conceal the embezzlement. This court would not, in any final or dispositive ruling, rely upon mere newspaper articles for any important fact. It would have been preferable for Gail to have procured court records documenting the embezzlement prosecution and guilty plea. However, for purposes of suggesting a need for discovery and defeating, at this stage, a motion for summary judgment, the court deems it appropriate to consider the information in the article. If

that David has proven the absence of any genuine issue concerning any material fact and that he is entitled to summary judgment as a matter of law. Discovery relating only to the issues above will not be unduly lengthy or burdensome, and will clarify the record on which the court must decide the statutory question. Accordingly, summary judgment for defendant David Ayars is DENIED, without prejudice to renewal following discovery. The court will refer the case to Magistrate Thomas P. Smith for supervision of discovery in accordance with this opinion.

*Motion for Continuing Support Pendente Lite*

■ Gail Ayars has made a motion for support during the pendency of this litigation, to be taken from the amounts paid into the registry by Champion. David opposes this motion. The court has determined that the motion for continuing support should be granted within the limits set forth below.

The undisputed facts in this case render an award of support appropriate. The parties agree that David Ayars was ordered by the Connecticut court to make support payments to his former wife and his children. David admits that he has disobeyed this order. It is undisputed that Gail has received no support payments since August of 1983, except one payment of $962.50 which was ordered by the court pursuant to an agreement of the parties. With the exception of this single payment, Gail has been without support payments for a period in excess of eight months.

As noted above, the only remaining issue in this litigation is the applicable percentage of David's earnings which is subject to garnishment. David admits in his papers filed in support of summary judgment that Gail is entitled to garnish 55% of his disposable earnings.[5] This percentage, according to David's calculations, yields an amount equal to $816.00 per two week pay period. The difference between this amount and the $962.50 ordered garnished by the Connecticut court is still subject to dispute by the parties. Under these circumstances, the court declines to order such disputed amount paid out to either party.

However, since Gail is entitled to garnish at least $816.00 of David's bi-weekly wages regardless of the ultimate resolution of the percentage issue, the court sees no reason to deny Gail support in this amount.

The motion for continuing support is accordingly GRANTED as set forth herein. The clerk of the court is hereby ORDERED to pay to defendant Gail Ayars, through her attorney of record, the amount of $8160.00, a sum equal to $816.00 times the number of payments made into the registry, less one (to reflect the single support payment previously made.) During the brief pendency of this litigation, the clerk is ORDERED to pay the amount of $816.00 to Gail Ayars on a continuing basis, as each payment is made into the registry by Champion.

David's new spouse has in fact committed the crime of embezzlement this raises two questions relevant to the statutory issue in this case. First, it raises an issue of credibility concerning Judith L. Ayars's affidavit in support of summary judgment, since embezzlement is a crime involving fraud and deceit. Second, it raises an issue as to whether Judith L. Ayars may have sums of money available to her such that she is not being supported by David. Especially since, in the six weeks since the articles were filed with the court, David has filed nothing contesting their accuracy, it would be improper to ignore the factual questions suggested and to

enter summary judgment prematurely. *Cf. Schoenbaum v. Firstbrook,* 405 F.2d 215, 218 (2d Cir.1968) (Reversing district judge's grant of summary judgment for defendant where facts were primarily in defendant's control and plaintiff requested discovery to counter defendant's affidavits.)

5. David's papers admit that, assuming the Connecticut court had jurisdiction to attach his Ohio wages, the applicable percentage is 55%. The court has ruled that the court did have authority to reach the Ohio wages.