Arthur Frank MILLARD, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 307–88 C.

United States Claims Court.

March 13, 1989.

Arthur Frank Millard, pro se.

John S. Groat, with whom were Asst. Atty. Gen. John R. Bolton, Director David M. Cohen, and Asst. Director M. Susan Burnett, for defendant. Major Robert Mc-Fetridge, Dept. of the Army, and Berenith A. Velez–Torres, Esq., USAFAC, of counsel.

## OPINION

WIESE, Judge.

The plaintiff in this case is a retired member of the United States Army whose military pay, commencing in September of 1984 (when he was still on active duty), became subject to a California wage assignment order (a garnishment order) for child and spousal support. In accordance with this order, the Army has been paying part of his monthly salary (now his retirement annuity) to his former spouse. This suit was brought to recover the monies thus withheld, the contention being that the Army's actions are in violation of the governing statute, 42 U.S.C. § 659 (1982) and its implementing regulations, 5 CFR 581.101 *et. seq.* (1988). The issue is before the court on cross-motions for summary judgment. Upon consideration of the par-

ties' briefs and without oral argument,[1] we hold for the Government.

## FACTS

The events which give rise to this lawsuit began on October 1, 1984 when plaintiff, then a lieutenant colonel stationed at Fort Gordon, Georgia, received a copy of his monthly pay statement showing a deduction of $760.77 from his basic pay for the month of September. No explanation accompanied this deduction other than the listing of his ex-wife's name.

Plaintiff made inquiry and was advised by the Army Finance Center in Indianapolis, Indiana, that the deduction was in compliance with a California court order. The Army further advised him that any disagreement he had, either with the lawfulness of the deduction or its amount, would have to be taken up with the California court. Several days later (the facts do not give a precise date) the Army Finance Center sent plaintiff a copy of the order in question.

This order, which is dated August 31, 1984, is an order issued by the Superior Court of California, County of San Francisco, titled "Order Assigning Salary Or Wages." The order contains the following information. First, it recites that "Respondent, Arthur F. Millard" (plaintiff herein) had previously been ordered to pay $300 per month in child and spousal support and that, as of the date of hearing (August 31, 1984), he was in arrears in these payments to the extent of $14,414.30. Second, the order directs that the salary or wages of Arthur F. Millard be assigned and made payable to "Petitioner, Donalinda Ace Millard" (plaintiff's former spouse). Third, it orders "the employer" to deduct $300 per month from respondent's wages "until fur-

ther order of court" and, commencing September 15, 1984, "$700 per month for a period of: 21 months" to make up the arrearage. The order was served on the United States Army in Indianapolis, Indiana on September 4, 1984; it remains in effect to this day notwithstanding plaintiff's retirement from the military on June 30, 1986.

From the beginning, plaintiff has protested the garnishment of his wages claiming that the California order was unwarranted in law and without justification in fact. His efforts to undo the order have been numerous and include a lengthy application for relief that was filed with the Army Board for Correction of Military Records on June 9, 1986. In a letter dated June 30, 1987, that board advised him that the Army was required by 42 U.S.C. § 659 to honor the wage assignment. The correction board's letter reads, in part, as follows:

> As garnishee, the Department of the Army does not have authority to remove from its own records a writ of garnishment that is regular on its face. Consequently, if you wish to attack the writ with constitutional or other arguments, you will have to do so in the Superior Court of California.

Plaintiff did not follow this advice. Instead, he has chosen to continue a collateral attack upon the garnishment order by seeking its invalidation in this court.

## DISCUSSION

Title 42 of the United States Code, Section 659 (1982), removes the barrier of sovereign immunity to state-authorized garnishment proceedings whose purpose is the enforcement of legal obligations for child support or alimony payments.[2] Implemen-

---

1. It is this court's practice to hear argument on every substantive motion and to allow out-of-town litigants to appear for such arguments by telephone, *i.e.*, through a reporter-recorded conference call. In this case, however, plaintiff declined to participate by telephone. He insisted instead that argument be heard in Atlanta, Georgia (a location near to his home) so that he could appear in person. His motion to this effect was denied; hence, no argument was

heard. We add that, while plaintiff is a *pro se* litigant, he is also a lawyer.

2. Section 659(a) provides as follows:
   Notwithstanding any other provision of law ... moneys (the entitlement to which is based on renumeration for employment) due from, or payable by, the United States ... to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States ...

tation of the statute involves (i) service upon the United States of legal process (meaning a writ of garnishment or similar process) issued by a "court of competent jurisdiction," 42 U.S.C. § 659(b), § 662(e), (ii) notice to the obligor, by the United States, of the receipt of such process, within "fifteen days after the date effective service is ... made," 42 U.S.C. § 659(d), and (iii) compliance with such process where it is "regular on its face," 42 U.S.C. § 659(f).

The statute specifies that the United States shall not be liable for any payments made "pursuant to legal process regular on its face, if such payment is made pursuant to regulations issued to carry out this section." 42 U.S.C. § 659(f). It is out of this section that plaintiff draws his arguments. He presents essentially two contentions. The first is that the legal process which the United States honored was not regular on its face; the second is that the procedures adhered to in complying with that process were not in conformance with regulation and statute. In considering these arguments, the specifics of which we come to in a moment, we refer first to the decision in *United States v. Morton*, 467 U.S. 822, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984), a case whose issues parallel, in part, our own.

■ Like the present case, the controversy in *Morton* involved a military service member who sued for the recovery of monies being withheld from his pay under the authority of an out-of-state garnishment order for alimony and child support. The question in the case was whether Section 659's requirement for the issuance of legal process by a "court of competent jurisdiction" contemplated an order issued by a court having personal jurisdiction over the support obligor. The answer was "no."

The rationale for this result was that the breadth of inquiry necessary to validate an exercise of *in personam* jurisdiction over a non-resident defendant was fundamentally at odds with the requirement for a process "regular on its face." The jurisdictional inquiry, the Court pointed out, examines

the question whether it is reasonable to expect a defendant to defend his interests in a distant and perhaps inconvenient forum, and thus requires "evaluating a specific aggregation of facts, as well as the possible vagaries of the law of the forum." *Id.* at 829, 104 S.Ct. at 2773. By contrast, ascertaining whether process is "regular on its face," demands no inquiry beyond the face of the document. As the Court explained (and here it quoted with approval from the Comptroller General's decision in *In re Matthews*, 61 Comp.Gen. 229, 230–31 (1982)):

"The inquiry into whether an order is valid on its face is an examination of the procedural aspects of the legal process involved, not the substantive issues. Whether a process conforms or is regular 'on its face' means just that. Facial validity of a writ need not be determined 'upon the basis of scrutiny by a trained legal mind,' nor is facial validity to be judged in light of facts outside the writ's provisions which the person executing the writ may know." 467 U.S. at 829, n. 10, 104 S.Ct. at 2773, n. 10.

Thus, the Court concluded that the kind of inquiry which a determination of personal jurisdiction entails was inconsistent with the limited inquiry necessary to establish the facial regularity of an order: "[i]nquiry into the issuing court's jurisdiction over the debtor cannot be squared with the plain language of the statute, which requires the recipient to act on the basis of the 'face' of the process." *Id.* at 829, 104 S.Ct. at 2773. Therefore, it was determined that, as regards the issue of personal jurisdiction, "[n]o such inquiry could have been intended." *Id.* at 831, 104 S.Ct. at 2774. (Footnote omitted). The *Morton* decision is dispositive of much of plaintiff's case.

Among the contentions which plaintiff raises is the argument that the order directed to the United States from the Superior Court of California—the Order Assigning Salary Or Wages—was not regular on its face and, thus, was void. None of the

were a private person, to legal process brought for the enforcement, against such in-

dividual of his legal obligations to provide child support or make alimony payments.

reasons he offers in support of this position has merit.

██ As the decision in *Morton* makes clear, the phrase "regular on its face," means nothing more than what it says: legal process whose validity, facially judged, appears to evidence a legitimate exercise of jurisdiction on the part of the issuing authority. Assessed against this standard then, the question is not whether there are infirmities underlying the garnishment order, as plaintiff attempts to show;[3] rather, the question is whether the order shows anything on its face that provides reasonable notice that it was issued without authority of law.

██ Quite clearly the answer is that it does not. The order is complete in all its details—it recites the names of the parties, the basis for the action being taken, and the amounts to be withheld. Further, it bears the seal of the court under whose authority it was issued, the stamped signature of the judge that ordered the action and, finally, an attestation by the clerk of the court that the instrument represents a correct copy of the original on file in the clerk's office. In short, the order is regular on its face.

Plaintiff insists, however, that in order to pass constitutional muster, a garnishment directive must be substantiated by more than just surface markers of procedural regularity. Specifically, it is his contention that the Fifth Amendment's assurance against deprivations of property without due process of law entitles him to an opportunity to contest in Georgia (the state of his residency) the jurisdictional validity of the California order. Since such an opportunity was not afforded him, he contends that the California order amounts to noth-

ing more than a constitutionally prohibited exercise of extra-territorial jurisdiction.

██ The immediate answer to this argument is that it is implicitly rejected by the decision in *Morton:* that case affirmed the enforceability of a garnishment order regular on its face notwithstanding an express assumption of lack of personal jurisdiction on the part of the out-of-state court that issued it. 467 U.S. at 827, 104 S.Ct. at 2772. Given this holding, an argument voicing opposition to a garnishment order for lack of an opportunity to collaterally attack the order logically cannot survive.

██ But, going beyond *Morton* to more fundamental ground, the answer to plaintiff's argument is that it rests on a mistaken understanding of the law. There can be no question that due process of law demands notice and an opportunity to be heard before a person may be deprived of his property. This does not mean, however, that a defendant is always free to raise the issue of personal jurisdiction through a collateral attack in a forum most convenient to him. Rather, that procedural benefit is a matter of happenstance; it occurs only where enforcement of an out-of-state judgment is being sought in the defendant debtor's own state. In other words, the situs of the litigation—the point where a defendant may be compelled to contest the assertion of a foreign court's jurisdiction over him—is simply a function of where his assets are reachable.[4] Thus, in the case of a multi-state garnishee (meaning a garnishee having a business presence in several states), a challenge to the jurisdictional underpinnings of the garnishment proceeding may well proceed in a state other than the one in which the

---

3. Plaintiff's arguments against the facial regularity of the order include, *inter alia,* the contentions that the order (i) fails to comply with California law regarding personal service, (ii) fails to comply with California law governing issuance of default judgments, (iii) fails to show compliance with federal laws governing default judgments against persons in military service, and (iv) is not a final order. These purported deficiencies are precisely the sort of defects which a facially-directed inquiry was meant to exclude.

4. Concerning so-called "attachment jurisdiction," the *Restatement (Second) of Judgments,* § 8 (1982), explains that a "court may exercise jurisdiction to seize property whose situs is in the state, by attachment, sequestration, or similar procedure, in an action concerning a claim *against the owner of the property if ...* (b) [t]he action is to enforce a judgment against the owner of the property."

wages have been earned. *See e.g., Champion International v. Ayars,* 587 F.Supp. 1274, 1276 (D.Conn.1984); *Calhoun v. United States,* 557 F.2d 401 (4th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 509, 54 L.Ed.2d 453 (1977). The short of the matter, therefore, is that if plaintiff wished to contest the California court's assertion of personal jurisdiction over him, he was bound to go to California to do so. And since there is no contention made here that California would not have provided him with a full and fair opportunity to be heard on his jurisdictional contentions, there can be no offense to due process in requiring that he present his arguments there.[5]

Moving to plaintiff's arguments about violations of regulation, the first issue we encounter has to do with the requirement in 5 CFR 581.202(a) (1988) that a garnishor must serve on the United States legal process "which names the governmental entity as garnishee."[6] Since the wage assignment order in question did not specifically name a governmental entity—it was directed simply to "employer"—the argument is made that the garnishment was unauthorized, *i.e.,* an impermissible enlargement of the waiver of sovereign immunity. The position is without merit.

■■■ Only Congress has the constitutional authority to waive the Government's immunity to suit, *United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654, 658–60, 67 S.Ct. 601, 603–04, 91 L.Ed. 577 (1947); *Minnesota v. United States,* 305 U.S. 382, 388, 59 S.Ct. 292, 295, 83 L.Ed. 235 (1939); hence, only Congress may specify the conditions under which that waiver shall be permitted to operate. Waiver of immunity and the conditions attendant thereto are expressions of the same authority. Regulations, by contrast, are simply the administrative ground rules for the operation of the statute and, as such, are intended as much for the protection of the Government as for the guidance of the public. Regulations can neither enlarge nor diminish the scope of the waiver of immunity. *Id.* The requirement that a garnishment order name the governmental entity to which it is directed is a requirement found not in the statute, but in its implementing regulations. Consequently, where the Government decides to honor a writ that only names a garnishee in general terms and not a governmental entity in particular, the action is a transgression of regulation and not an unauthorized enlargement of the basic statute.

■■■ This is not to say, however, that the Government may not be held accountable for the infraction. Clearly, if because of a departure from regulation, funds in the Government's hands are mistakenly paid over to a garnishor not otherwise entitled to them, then the Government shall have to remedy its error by restoring the misdirected funds to the rightful owner. *See Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007–08 (1967). In other words, the violation of regulation is monetarily redressable to the extent of any loss *actually* suffered on account of it. Here, however, we have no occasion to consider this last point since proof of actual damages would require plaintiff to establish that the garnishment was unlawful from the start.

The last point we take up concerns plaintiff's contention that the Army failed to accord him the benefit of the 15–day notice provision specified in Section 659(d). That section provides, *inter alia,* that the United States "shall, as soon as possible but not later than fifteen days [after effective service of process] send written notice that such process has been ... served (together with a copy thereof) to the individual whose moneys are affected thereby ..." Plaintiff's complaint is that he was never timely

**5.** To be more specific, plaintiff does not argue that a California hearing was unavailable or inadequate or that he could not have entered a limited appearance in California for purposes of challenging the court's assertion of jurisdiction over him.

**6.** The section referred to, 5 CFR § 581.202(a), reads in its entirety as follows:

A party using this part shall serve on the designated agent of the governmental entity which has moneys due and payable to the obligor, legal process which names the governmental entity as the garnishee.

alerted to the fact that the Government had been served with a garnishment order nor was he made aware of the basis for the withholdings from his pay until after they had begun. These actions, he says, violated his rights.

■ If these contentions are true—and for purposes of testing the Government's motion for summary judgment we assume they are—then there can be no question that the Army was in breach of the statute. However, this, of itself, occasions no right to monetary relief. Rather, to base a cause of action on the Army's maladministration, plaintiff must demonstrate an out-of-pocket loss because of it. In other words, plaintiff must show that the lack of notice foreclosed his right to overturn the garnishment order, either initially or after it became effective. However, since he never sought any relief in California—this despite constant advice to that effect—he is hardly in a position now to allege that lack of notice deprived him of an opportunity to undo the wage assignment. His complaint about lack of notice is without merit.[7]

## CONCLUSION

In the dissenting opinion in *Morton v. United States*, 708 F.2d 680 (Fed.Cir.1983), the point is made that, under Section 659, "[n]o more is required than that whatever process is served on the Government, the papers must be facially regular and be issued by a court with garnishment jurisdiction." *Id.* at 703. These views are now the law, *United States v. Morton*, 467 U.S. 822, 836, 104 S.Ct. 2769, 2777, 81 L.Ed.2d 680 (1984) and, given the facts of this case, they dictate a decision in the Government's favor. Accordingly, the Government's motion for summary judgment is granted. The complaint shall be dismissed.

---

7. In addition to the arguments considered in the opinion text, plaintiff's brief presents numerous additional arguments respecting the alleged invalidity of the garnishment order and the procedures followed by the Government in the implementation of that order. Regarding these arguments, it shall suffice to say that we have considered all but find them too lacking in substance to warrant discussion.