**Arthur Frank MILLARD,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

No. 89–1461.

United States Court of Appeals,
Federal Circuit.

Sept. 28, 1990.

Suggestion for Rehearing In Banc
Declined Nov. 26, 1990.

Arthur Frank Millard, Atlanta, Ga., pro se.

John S. Groat, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for defendant-appellee. With him on the

brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, and Mary Mitchelson, Asst. Director. Also on the brief was Lieutenant Colonel Mark Steinbeck, and Major Robert McFetridge, Dept. of the Army, of counsel.

Before NIES, Chief Judge,* BENNETT, Senior Circuit Judge, and ARCHER, Circuit Judge.

NIES, Chief Judge.

Arthur Frank Millard, now a retired member of the United States Army, appeals from the judgment of the United States Claims Court, *Millard v. United States*, 16 Cl.Ct. 485 (1989) (Wiese, J.), granting summary judgment in favor of the government on Millard's claim under the Back Pay Act[1] for the part of his monthly salary which the government paid to his former spouse pursuant to a wage assignment order for child support and alimony issued by the Superior Court of California, County of San Francisco. A California wage assignment for support is a type of garnishment to which the United States has consented to subject itself by 42 U.S.C. § 659(a) (1988). We affirm.

## I

### 42 U.S.C. § 659

*Wages Due From the United States Are Subject To State Court Legal Process For Child Support and Alimony Payment*

Garnishment is a legal proceeding brought by a creditor (garnishor) of a person (the debtor) against a third party (garnishee) to obtain property of the debtor in the hands of the third party to satisfy the debt owed to the garnishor. *Harris v. Balk*, 198 U.S. 215, 226, 25 S.Ct. 625, 628, 49 L.Ed. 1023 (1905). Garnishment is purely a creature of state law. *Id.* at 222, 25 S.Ct. at 626. Such process is routinely provided by state law for enforcement of court-ordered child support and alimony (a judgment debt) and may be used to reach wages of the judgment debtor in the hands

of an employer. *See United States v. Morton*, 467 U.S. 822, 832 & n. 15, 104 S.Ct. 2769, 2775 & n. 15, 81 L.Ed.2d 680 (1984). A garnishment proceeding to enforce a judgment debt is an ancillary legal proceeding against the third party garnishee and must be brought where jurisdiction can be obtained over the third party. *Harris v. Balk*, 198 U.S. at 222, 25 S.Ct. at 626. No legal proceeding, including garnishment, may be brought against the United States absent a waiver of its sovereign immunity. *See United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Thus, prior to enactment of 42 U.S.C. § 659 in 1974, wages payable from the United States to an employee were not available for garnishment or similar legal process. *See, e.g., Bolling v. Howland*, 398 F.Supp. 1313 (M.D.Tenn.1975). In 1974, Congress gave consent to proceedings in the nature of garnishment against the United States but only for enforcement of court-ordered child support and alimony. Specifically, the statute provides:

**§ 659. Enforcement of individual's legal obligations to provide child support or make alimony payments**

**(a) United States and District of Columbia to be subject to legal process**

Notwithstanding any other provision of law ... moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

California, in addition to providing for regular garnishment proceedings, has enacted a special procedure, termed a wage

---

* Chief Judge Nies assumed the position of Chief Judge on June 27, 1990.

1. 5 U.S.C. § 5596 (1988).

assignment, whereby the recipient of court-ordered child or spousal support may obtain a partial assignment of the delinquent party's wages including future wages.[2] Specific procedures are delineated in the California statutes to obtain this type of relief. After receiving a child or spousal support award pursuant to California divorce proceedings, the party entitled to such payments may file a petition against the allegedly delinquent party to obtain an order that that party is in default in the court-ordered payments and in contempt of the court's prior judgment. Once a party obtains an arrearage order, that party may obtain, in an *ex parte* proceeding, another order from that court wherein the court assigns wages of the judgment debtor to the judgment creditor. Cal.Civ.Code § 4701(b) (Deering 1984). The court has no discretion to do otherwise. *See Lang v. Superior Court*, 153 Cal.App.3d 510, 200 Cal.Rptr. 526 (1984) (mandamus action). The wage assignment order need not be served immediately on anyone. It becomes effective ten days from the date service is made on any employer of the named judgment debtor. Cal.Civ.Code § 4701(b)(4). Thereafter, the employer "shall continue to withhold" a stated amount from wages or salary due the employee and pay that amount to the named party who obtained the wage assignment. Cal.Civ.Code § 4701(b)(7). No specific employer is named in a California wage assignment.[3] Such assignment is binding on all current and future employers who are served with a copy. Cal.Civ.Code § 4701(a)(1). Moreover, the term "employer" is specifically defined in the California statute to include the United States. Cal.Civ.Code § 4701(g).

The record discloses that Donalinda Ace Millard, appellant's former spouse, obtained an order of arrearage from the Superior Court in San Francisco, California on December 9, 1983, that found appellant to be in arrears in payment of both child and spousal support as of August 31, 1983. Appellant did not appear in that proceeding, although he was personally served in Georgia on October 11, 1983, and provided with an opportunity for a hearing. Appellant does not contest the fact that the arrearage award was obtained in accordance with California law. Donalinda later obtained an order from that same court assigning appellant's salary or wages. This California wage assignment was served on the appropriate pay officer of the United States Army Finance Center in Indianapolis, Indiana, on September 14, 1984. The standard wage assignment form was completed with the required statements that Arthur F. Millard was required to pay $300.00 a month in child and spousal support and was found, as of August 31, 1984, in arrears in the amount of $14,414.30. The court ordered the salary or wages of Arthur F. Millard assigned and payable to petitioner, Donalinda, in the amount of $300.00 per month until further order of the court plus $700.00 per month for 21 months commencing September 15, 1984, to satisfy the arrearage.[4]

The Army complied with the wage assignment by making deductions from Millard's monthly paycheck beginning with his

---

2. Reference is made throughout to Cal.Civ.Code §§ 4701 and 4801.6 (Deering 1984), effective July 1, 1983, which apply in this case. The type of relief authorized therein, a wage assignment, is much more effective than a writ of garnishment which must be directed to a particular employer for *past* due wages. The procedure has proved so effective it has been adopted by Congress as a mandatory procedure in the Family Support Act of 1988, Pub.L. No. 100–485, 102 Stat. 2343 (amending 42 U.S.C. § 666). *See* discussion in *In re Marriage of Wilson*, 209 Cal. App.3d 720, 257 Cal.Rptr. 477 (1989).

3. The Judicial Council of California purposefully adopted a *generic* employer form of assignment for use in this type of garnishment. *See*

*In re Marriage of Everett*, 220 Cal.App.3d 846, 269 Cal.Rptr. 917 (1990).

4. The Millards were apparently divorced in California and the subsequent orders of the court flow from that divorce proceeding. Colonel Millard does not here contest the validity of the divorce and has remarried. Although the Claims Court gave Colonel Millard the opportunity to put in evidence, by telephone or in person, particularly on where the divorce occurred, Colonel Millard refused to do so and demanded the court hold hearings in Georgia, where he is currently living. The court did not abuse its discretion in refusing to take the court to Millard.

check of October 1, 1984. Millard was at the time stationed in Georgia. Millard first attacked the deductions before the Army Board for Correction of Military Records and, then, before the Controller General. When these efforts were unsuccessful, he filed suit in the U.S. Claims Court. At no time has he undertaken to defend or challenge the orders of arrearage or wage assignment in the California court. He maintains that he was not obligated to do so although repeatedly advised by the Army that it was his obligation to proceed in California to have the wage assignment set aside. Because Millard raises a plethora of issues dependent on various facts, we will defer a more detailed statement and supplement the facts as we address each issue.[5]

While the underlying theme of Millard's various arguments is that the Army should not have honored any legal process for garnishment except from his present state of residence, Georgia, these arguments are presented as challenges to the legal process from the California court which, per Millard, was not regular on its face. Thus, the government erred, he argues, in complying with the order. He also asserts the government did not comply with certain other sections of the federal statute and regulations respecting garnishment procedures and, therefore, must be held liable to him on this ground.

The government counters (1) that state law discharges the government from liability to Millard for his pay by reason of the government's payment to his ex-wife pursuant to the California wage assignment and (2) that the government's acts, in any event, fall within the scope of section 659(f), a provision added in 1977, which specifies that the United States *shall not be liable* for any payments made "pursuant to legal process regular on its face, if such payment is made in accordance with this

section and the regulations issued to carry out this section."[6]

For reasons which follow, we conclude that while the specific exculpatory provision of section 659(f) has not been shown to be invokable on the present record, Millard has advanced no sound legal basis for imposing liability on the United States under state law. Thus, the Claims Court did not err in granting summary judgment in favor of the government.

## II

### *Liability and Immunity Provisions of Section 659*

Two distinct issues are present in a suit against the government as garnishee, brought either by the garnishor or the employee. First, under § 659(a), the question must be answered whether the government would be liable to the plaintiff under state law. Second, if state law would impose liability on a private garnishee, the question then is whether the government is not liable because of the exculpatory provision, § 659(f), added to the federal statute in 1977. *See* Pub.L. No. 95–30, § 501(a), (b), 91 Stat. 157. Even without the latter provision, in effect a reservation of sovereign immunity, the government cannot be held liable in a suit for the wages paid or not paid under the writ in circumstances in which a private employer would not be held liable. If state law exculpates an employer, that ends the challenge against the United States as far as any claim based on garnishment principles. To illustrate resolution of the first question, in *Calhoun v. United States,* 557 F.2d 401 (4th Cir.) (per curiam), *cert. denied,* 434 U.S. 966, 98 S.Ct. 509, 54 L.Ed.2d 453 (1977), which was decided before the immunity provision was enacted, the Fourth Circuit found no liability on the part of the government for com-

---

**5.** While Millard appears *pro se,* he is a lawyer.

**6.** In its entirety, section 659(f) reads:
**(f) Non-liability of United States, disbursing officers, and governmental entities with respect to payments**
Neither the United States, any disbursing officer, nor governmental entity shall be liable with respect to any payment made from moneys due or payable from the United States to any individual pursuant to legal process regular on its face, if such payment is made in accordance with this section and the regulations issued to carry out this section.

plying with a California garnishment writ respecting the wages of an employee who was resident in Virginia at the time the government was served. The Fourth Circuit, applying standard garnishment principles, held that the employee, not the government, was obligated to challenge the order of the California court to stop the garnishment. Once legal process is properly served on the government, the government has to pay in accordance with the order; otherwise it may be liable to the garnishor for the amount ordered to be paid. *See, e.g., In re Matthews*, 61 Comp. Gen. 229, 230 (1982); *In re Bailey*, 56 Comp.Gen. 592, 594 (1977) (United States subject to District of Columbia law making employer liable to judgment creditor for failing to withhold money from an employee's salary.); Cal.Civ.Code § 4701(b)(7); Cal.Civ.Proc.Code § 706.154(a).

■ To a large extent the later enacted immunity provision of section 659(f) parallels the circumstances in which state law would not impose liability on a garnished private employer. *See Morton v. United States*, 708 F.2d 680, 697 (Fed.Cir.1983) (Nies, J., dissenting), *rev'd*, 467 U.S. 822, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984). Under general principles of garnishment, an employer who honors a writ "regular on its face" issued by a court of competent jurisdiction,[7] who is properly served, and who gives notice to the employee so that the employee may timely challenge the garnishment has no further duty to the employee. The employer's payment of wages due the employee in accordance with the order of such court discharges the employer's debt to the employee. *See Morton v. United States*, 708 F.2d at 694 (Nies, J., dissenting); Cal.Civ.Proc.Code § 760.154(b). *See also Clyne v. Easton, Eldridge & Co.*, 148 Cal. 287, 83 P. 36 (1905); *McDaniel v. City & County of San Francisco*, 259 Cal.App.2d 356, 66 Cal. Rptr. 384 (1968).

The immunity provision of section 659(f) incorporates these requirements but is narrower in that the statutory immunity provided therein is also conditioned on the government's compliance with all of the statutory provisions of section 659 and the regulations issued thereunder. However, the government need not resort to exculpation under section 659(f) if it would not be liable to its employee under state law inasmuch as section 659(a) subjects the United States to liability in connection with garnishment only "in like manner and to the same extent as if the United States were a private person."[8] *See Morton*, 467 U.S. at 832–33, 104 S.Ct. at 2775.

## III

### *The California Wage Assignment Was Regular on its Face*

*United States v. Morton*, 467 U.S. 822, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984), is the leading case on interpretation of section 659 and the obligations of the United States upon being served with a writ of garnishment. In *Morton*, the Supreme Court held that the United States was not liable to an employee for wrongful payment of wages to the employee's former spouse pursuant to a writ of garnishment issued by an Alabama state court, even assuming the Alabama court did not have *in personam* jurisdiction over the employee in the underlying proceedings. Colonel Morton claimed his residence was in Alaska. The Court held that the United States was bound under section 659 to honor a writ from a court which had subject matter jurisdiction to issue the writ. If the writ was regular on its face in this respect, the United States could not look behind the writ to determine whether such court also had acquired personal jurisdiction over the employee. It had to obey the writ.

Millard seeks to distinguish his situation from the holding in *Morton* in that, unlike

---

7. A "court of competent jurisdiction" is one with subject matter jurisdiction to issue the order; it need not also be shown that such court had *in personam* jurisdiction over the defendant. *United States v. Morton*, 467 U.S. at 835–36, 104 S.Ct. at 2777 (citing 5 C.F.R. § 581.305(a) (1984)).

8. For a more complete explanation of §§ 659(a) and (f) see the dissenting opinion of Nies, J., in *Morton v. United States*, 708 F.2d at 692–97.

Colonel Morton, he is attacking the wage assignment order here as not "regular on its face." In support of this attack, he puts forth a confusing array of arguments to which we have attempted to give some structure.

Millard initially appears to argue that because the arrearage order indicates on its face that he was not served in California, that order, which gave rise to the wage assignment, is void, and thus the wage assignment is not "regular on its face." Contrary to Millard's view, a court may acquire *in personam* jurisdiction over a nonresident served outside the state. The ubiquitous long-arm statutes negate Millard's legal contention. *See, e.g.,* Cal. Civ.Proc.Code § 410.10 (Deering 1984). A nonresident person not physically present in a state need only have the necessary "minimum contacts" to satisfy due process principles. *Kulko v. Superior Court,* 436 U.S. 84, 92, 98, 98 S.Ct. 1690, 1697, 1700, 56 L.Ed.2d 132 (1978). Thus, if the wage assignment and the underlying order of arrearage do establish that Millard was a resident of, and was served in, Georgia, that did not serve to alert the government that the California court did not have jurisdiction. As stated by the Supreme Court in *Morton,* the jurisdiction of the issuing court over the employee simply cannot be determined on the face of the writ. *Morton,* 467 U.S. at 828–29, 104 S.Ct. at 2773. Thus, a statement in a writ that the defendant is a nonresident of the state and was served outside the state does not negate its facial regularity.

Millard next argues that his pay was not in California and, thus, was not subject to garnishment there. However, the nebulous concepts surrounding the situs of a debt are irrelevant in this case where garnishment is issued to enforce an existing judgment. The court issuing a garnishment order for enforcement of its own judgment need only acquire jurisdiction over the garnishee. *See, e.g., Javorek v. Superior Court,* 17 Cal.3d 629, 131 Cal. Rptr. 768, 552 P.2d 728 (1976); *Atkinson v. Superior Court,* 310 P.2d 145, 151 (Cal.Ct. App.1957). The United States is subject to the jurisdiction of the California court for garnishment purposes, as it is throughout the United States, in view of its waiver of sovereign immunity in section 659(a) and its specification of where such process may be served. 5 C.F.R. § 581.201(a) (1990) (App. A). Millard's argument that any California judgment had to be domesticated in Georgia to be enforceable *against him* also misses the mark. The dispositive point here is that the California court could enforce its order in California against the United States.[9]

In connection with this issue, Millard also puts forth numerous due process arguments based on his interpretation of prejudgment attachment safeguards which he seeks to apply to post-judgment enforcement of a money judgment. It suffices to say concerning these due process arguments that the presence of Millard's wages in California was not the jurisdictional basis for the underlying *arrearage* order. Only *after* the arrearage order was obtained, thereby creating a judgment debt, was enforcement of that debt sought against his employer. Thus, Millard's citation to *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and similar authority which restricts acquisition of jurisdiction over a nonresident by means of prejudgment attachment of his property is inapposite. The wage assignment here was not used for that purpose. A money judgment had previously been obtained against Millard by his wife. If we assume the California court did not have jurisdiction to issue a

---

**9.** *Nelson v. Nelson,* 173 Ga.App. 546, 327 S.E.2d 529 (1985) is not contrary authority. That case held that a spouse seeking a writ of garnishment was not entitled to such writ under particular state law. Here, the "writ" has been issued.

Further, Millard's assertion that the other provisions in federal and state law respecting reciprocal enforcement by the states of support orders is similarly misplaced. These provisions deal with the situation where a spouse is unable to obtain a support judgment in that person's state of residence, because that state cannot obtain jurisdiction over the other party. *See* 42 U.S.C. § 654 (1988). A California judgment of arrearage was obtained here against Millard.

money judgment against him, as the Supreme Court assumed was the case in *Morton*, the United States nevertheless had to obey the enforcement order (wage assignment), and such compliance gives rise to no claim by Millard against the United States. His due process rights in having a money judgment entered against him, if violated, would have been violated by the California court that issued the order, not the United States which merely complied with that order as it was required to do. Moreover, it is undisputable that the California court provided full opportunity for Millard to challenge the arrearage judgment and would, in addition, have entertained a motion to quash the wage assignment. Millard simply failed to avail himself of his rights.

■■■ Millard appears to believe that merely by *saying* that he is attacking the regularity of the legal process *on its face,* the way is thereby open for Millard to proceed with a substantive collateral attack on the California process for reasons concerning its asserted jurisdiction over him. Contrary to Millard's view, the Claims Court did not *find* that the California court *had* jurisdiction over him. That was unnecessary. The Claims Court held that such arguments are precluded under *Morton.* We agree. The legal process from the California court was regular on its face and no further inquiry was necessary by the United States.

Finally, Millard looks to other federal statutes, for example, the Soldiers' and Sailors' Civil Relief Statute of 1940, 50 U.S.C.App. § 501 *et seq.,* and maintains that this act was violated. Millard's difficulty is that he attempts to assert the same rights in litigation against his garnisheed employer as he would have in litigation against his wife. An employer is simply a stakeholder who must obey the order of a court properly served on it. *See, e.g.,* Cal. Civ.Proc.Code § 706.154(b); *Atkinson v. Superior Court,* 310 P.2d 145 (Cal.Ct.App. 1957) (mandamus action). The employer's duty to its employee is to inform the employee of what has happened so that he can himself timely challenge the court's action

garnishing his wages. *See* Cal.Civ.Code § 4701(b)(5). As stated in *Harris v. Balk,* 198 U.S. at 227, 25 S.Ct. at 628:

> Thus [i]t is recognized as the duty of the garnishee to give notice to his [employee], . . . so that the [employee] may have the opportunity to defend himself against the claim of the person suing out the attachment. . . . This notification by the garnishee is for the purpose of making sure that his [employee] shall have an opportunity to defend the claim made against the attachment suit. Fair dealing requires this at the hands of the garnishee.

*See also, Morton,* 708 F.2d at 695 (Nies, J., dissenting).

■■■ There is an issue of late notice by the government in this case which we will address shortly. All that is necessary here is to state that compliance with all federal statutes concerning the rights of servicemen does not have to appear *on the face* of the legal process served on the government to make such process regular on its face.

## IV

### *Procedural Objections*

A. *Noncompliance with 5 C.F.R. § 581.202(a)*

■■■ Millard asserts that the Army violated 5 C.F.R. § 581.202(a) (1990) which provides that a garnishor must serve on the United States legal process "which names the governmental entity as garnishee." As indicated, the type of legal process used in this case is a blanket wage assignment which in its regular form is directed generically to any "employer" of the judgment-debtor. Further, the statutory definition of "employer" in the California statute includes the United States specifically. *See* Cal.Civ.Code § 4701(g).

The Army interprets its regulation requiring identification of a "government entity" to be satisfied by the generic designation of "employer" which appears in a California wage assignment. In other words, "employer" in the order is construed to identify the government. Millard argues that the legal process must state a specific

governmental entity in the body of the wage assignment to comply with the regulation. Nothing in the federal statute imposes this restriction on legal process which the government must accept. In effect, Millard's interpretation would rule out this type of legal process as a means of garnishment against military wages.

 We conclude that the government's interpretation of the regulation is reasonable given the broader language of the statute itself. The statute waives immunity broadly for service of "legal process [with respect to] legal obligations to provide child support or make alimony payments." 42 U.S.C. § 659(a). The subject California wage assignment for child and spousal support falls squarely within the waiver provided by section 659(a), and the government's interpretation of the regulation, thus, does not transgress the scope of that statutory waiver. Indeed, the interpretation is not merely reasonable but mandated by the statute. *See, e.g., Morton,* 467 U.S. at 835–36, 104 S.Ct. at 2777 (regulations invalid when "clearly inconsistent" with the statute).

 Moreover, as the Claims Court indicated, even if the regulation were interpreted to require the Army to be named specifically, the purpose of the regulation is "protection for the Government" and can be waived. In other words, the government might assert, in an appropriate case, as against a *garnishor,* that such garnishor did not comply with the regulation and, therefore, the government is not liable for *failure* to honor a particular order. Indeed, the regulation is structured into the part of regulations directed to service of process *by* the garnishor. The rights of the employee whose wages are being garnished are set forth in a later part of the regulations, section 581.302, to which we turn now. As far as the requirement to

name a government entity, we agree that Millard has no claim based on that regulation.

## B. Noncompliance with 42 U.S.C. § 659(d) and 5 C.F.R. § 581.302

 Millard further asserts that the Army failed to provide notice of garnishment within the time period required not only by regulation but also by statute. Section 659(d) reads:

**(d) Notice**

Whenever any person, who is designated by law or regulation to accept service of process to which the United States is subject under this section, is effectively served with any such process or with interrogatories relating to an individual's child support or alimony payment obligations, such person shall respond thereto within thirty days (or within such longer period as may be prescribed by applicable State law) after the date effective service thereof is made, and shall, as soon as possible but not later than fifteen days after the date effective service is so made of any such process, send written notice that such process has been so served (together with a copy thereof) to the individual whose moneys are affected thereby at his duty station or last-known home address.

The regulation, 5 C.F.R. § 581.302, further specifies the contents of the notice.[10]

The Army submitted a copy of the required notice which it believes was timely, but it was not able to verify at the time of the summary judgment motion the exact date such notice was given to Millard. For purposes of summary judgment, the government, therefore, does not contest Millard's statement that he did not receive the notice of garnishment within the statutory 15–day period.

---

**10.** The regulation generally requires that the notice include a copy of the legal process, the maximum garnished limitations as set forth in § 581.402, requests for submissions by the obligor of documentation necessary to make calculations, explanation that obligor's sending affidavits constitutes consent to their disclosure, and the percentage of wages to be garnished if

obligor fails to submit any needed documentation. 19 C.F.R. § 581.302(a). The notice may include additional information explaining the obligor's rights and available protection, and that the United States does not represent the interests of the obligor in the proceedings. 19 C.F.R. § 581.302(b).

The trial court held that Millard had to demonstrate that the lack of notice foreclosed his right to overturn the wage assignment and concluded that, since Millard never sought any relief in the California court, such prejudice could not be shown. *Millard*, 16 Cl.Ct. at 490–91. We agree with this analysis with respect to the absence of liability under state law and add only the following additional points.

First, the lack of notice affects, at most, the deduction from Millard's October 1, 1984 paycheck. Millard acknowledges the receipt of a proper notice from the government in early October. *Id.* at 487. Millard's theory that if he was not given notice within the first 15 days, all payments made after that time are wrongful is untenable. Statutory time periods have varying significance. In some statutes, time limits are merely precatory. *See, e.g., Tuft v. McDonnell Douglas Corp.*, 517 F.2d 1301, 1306–07 & n. 10 (8th Cir.1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641 (1976) (EEOC failure to complete investigation within statutorily prescribed time limit for bringing suit does not bar suit by employee); *Cunningham v. Litton Indus.*, 413 F.2d 887, 890 (9th Cir.1969) (same); *Miller v. International Paper Co.*, 408 F.2d 283, 287 & n. 17 (5th Cir.1969) (same); *Choate v. Caterpillar Tractor Co.*, 402 F.2d 357, 361 (7th Cir.1968) (same). In others, they are absolutely critical. *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (Federal Tort Claims Act suit barred if not brought within two years of time when cause of action accrues); *United States v. Mottaz*, 476 U.S. 834, 851, 106 S.Ct. 2224, 2234, 90 L.Ed.2d 841 (1986); *Kabua v. United States*, 546 F.2d 381, 383, 212 Ct.Cl. 160, 164 (1976), *cert. denied*, 434 U.S. 821, 98 S.Ct. 63, 54 L.Ed.2d 77 (1977). Here, we conclude that the trial court correctly analyzed the significance of the violation in terms of prejudice. No doubt the statutory and regulatory provisions are for the pro-

tection of the employee. However, to hold that a nonprejudicial delay would require the government to pay double wages forever after is contrary to state law principles of garnishment.

The federal statute generally parallels the requirement in the California Code that the garnishee/employer must give prompt notice to the employee of the wage assignment although California provides even less time. California law gives ten days for the wage assignment to become effective during which time period the employer is directed to give notice to its employee of the assignment. Cal.Civ.Code § 4701(b)(5). The California statute further provides that the employee has ten days from *the date of such notice from the employer* in which to move to quash the wage assignment. Cal. Civ.Code § 4701(b)(6). Thus, the delay in receiving notice does not prejudice the employee with respect to his time period for contesting the wage assignment. However, only limited defenses are available to that order [11] and failure to contest the wage assignment within the time period allowed for a motion to quash ends that possibility.

In this case, Millard had until the end of October, 1984 to challenge the wage assignment order in the California court from which it originated, and he failed to do so. In the Claims Court, he proffered no evidence, in any event, of a viable defense to the wage assignment under California law. The government's delay in giving notice was clearly not prejudicial with respect to deductions beginning November 1, which he could have contested in advance of their being made. Thus, only the first deduction is possibly in question. However, from the structure of the statute we conclude that California law does not impose liability on an employer for failure to give notice in *advance* of the first deduction.

11. *See* Cal.Civ.Code § 4701(b)(6); *In re Marriage of McLucas*, 210 Cal.App.3d 83, 258 Cal. Rptr. 133 (1989); *Solberg v. Wenker*, 163 Cal. App.3d 475, 209 Cal.Rptr. 545 (1985); *Le Claire v. Le Claire*, 118 Cal.App.3d 931, 173 Cal.Rptr. 740 (1981) (section 4701(b)(6) contains grounds on which to quash an assignment order issued). For example, payment of the arrearage after the judgment is a defense.

Under the California statute, the time periods do not work out to guarantee advance notice of deductions. A wage assignment is effective upon the expiration of ten days and the employer is required thereafter to pay the assignee. Cal.Civ. Code §§ 4701(b)(4), (7). The tenth day is also the day by which notice must be given to the employee. Cal.Civ.Code § 4701(b)(5). The wage assignment and the notice provision, thus, have the same effective date with no time allowed for a prior hearing on a motion to quash. Moreover, the statute specifically requires payment by the employer to the garnishor while any motion to quash is pending and such payments must continue until the employer is served with notice that the motion to quash has been granted. Cal.Civ.Code § 4701(b)(7).

Thus, we conclude that due to the government's delay in notice, the first deduction was not precluded from challenge in court under § 459(f) and no prejudice has been shown from untimely notice with respect to any of the deductions. The United States gave notice which afforded Millard ample "opportunity to defend"[12] the garnishment in the California court because the time did not begin to run until such notice was given.

 Millard, thus, was not prejudiced by the government's alleged delay[13] and the United States would, therefore, like any other employer, not be liable to its employee under state law.

V

*Summation*

To a large extent Millard's arguments for imposition of liability on the government are based on rights he discerns in section 659(f), the provision added in 1977 which, as previously indicated, expressly *negates* the liability of the United States under certain conditions. This provision of the statute does not *impose* liability on the

government in any circumstances. Rather it preempts the imposition of liability under state law and preserves sovereign immunity if the government meets the conditions set forth therein. The Supreme Court in *Morton*, 467 U.S. at 831 n. 12, 104 S.Ct. at 2774 n. 12, expressly gave this interpretation of the statute, stating:

> The 1977 amendment of the statute, adding § 659(f), ... specifies only those circumstances in which the Government is *not liable*. [Emphasis added.]

Assuming the government did not meet the express exemption, Millard can only recover if, under California law, a private employer would be held liable to Millard for wrongful garnishment had it acted the same as the government acted here. Millard appears to have lost sight of the basic provision—section 659(a)—which makes moneys payable by the United States as employer "subject *in like manner and to the same extent* as if the United States were a private person." The government prevails if it falls within the express exemption *or* if it would not be liable under state law.

By failing to provide notice within 15 days, the government does not meet the literal requirement of section 659(f) for assertion of the immunity there reserved. Whether section 659(f) should be analyzed in terms of harmless error, we need not decide. To counter the government's assertion of no liability under state law, Millard had to come forward with evidence or sound legal principles which at least would raise a question that California might impose liability on a private employer to its employee in this case. He failed to do so. Thus, the award of summary judgment in favor of the government was correct. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

**12.** *Harris v. Balk*, 198 U.S. at 227, 25 S.Ct. at 628.

**13.** Violation of the regulation in itself, of course, does not create a money mandating claim. *See, e.g., Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 738–41, 102 S.Ct. 2118,

2124–26, 72 L.Ed.2d 520 (1982); *United States v. Mitchell*, 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Millard*, 16 Cl.Ct. at 491.

242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The judgment of the Claims Court is, therefore,

AFFIRMED.